1   FELIX WOO (State Bar No. 208107)
    fwoo@sonnenschein.com
2   BONNIE LAU (State Bar No. 246188)
    blau@sonnenschein.com
3   SONNENSCHEIN NATH & ROSENTHAL LLP
    601 South Figueroa Street, Suite 2500
4   Los Angeles, California 90017-5704
    Telephone: (213) 623-9300
5   Facsimile: (213) 623-9924

6   Attorneys for Plaintiff
    BLIZZARD ENTERTAINMENT, INC.

7

8

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13  BLIZZARD ENTERTAINMENT,          Case No. 2:09-cv-7621-SVW-AJW
    INC.,
14                                   PLAINTIFF BLIZZARD
              Plaintiff,             ENTERTAINMENT, INC.'S
15
        vs.                          (1)  NOTICE OF MOTION AND
16                                        MOTION FOR DEFAULT
    ALYSON REEVES, D/B/A                  JUDGMENT AGAINST
17  SCAPEGAMING, and DOES                 ALYSON REEVES, D/B/A
    1 through 5 inclusive,                SCAPEGAMING; AND
18
              Defendants.            (2)  SUPPORTING MEMORANDUM
19                                        OF POINTS AND AUTHORITIES

20                                   [Fed. R. Civ. P. 55(b)(2)

21                                   Date:    July 19, 2010
                                     Time:    1:30 p.m.
22                                   Place:   Courtroom 6
                                     Before:  Hon. Stephen V. Wilson
23

24

25

26

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on July 19, 2010, at 1:30 p.m., in Courtroom 6 of the United States District Court, Central District of California, located at 312 N. Spring Street in Los Angeles, California, plaintiff Blizzard Entertainment, Inc. ("Blizzard"), will move, and hereby does move, the Court for Entry of Default Judgment in the amount of $24,002,139.00 against defendant Alyson Reeves, d/b/a Scapegaming ("Defendant"), pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55-1.  The Clerk entered default against Defendant on January 14, 2010.

Blizzard makes this motion on the following grounds, and at the time and place of any hearing will present proof of the following matters:

1.     Defendant is not an infant or incompetent person or in military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940.

2.     Blizzard effected service of the summons and complaint on Defendant on November 4, 2009, and filed the Proof of Service of Summons and Complaint with this Court on January 11, 2010.

3.     Defendant has not appeared in this action.

4.     The clerk entered default in this action on January 14, 2010.

5.     Blizzard is entitled to judgment against Defendant on the Complaint for (1) Copyright Infringement, (2) Contributory and Vicarious Copyright Infringement, (3) Circumvention of Copyright Protection Systems, (4) Breach of Contract, (5) Intentional Interference with Contract, and (6) Unfair Competition, in the action entitled *Blizzard Entertainment, Inc. v. Alyson Reeves, d/b/a Scapgaming, et al.*, pending in the United States District Court for the Central District of California, Case No. 2:09-CV-7621-SVW-AJW.

6.     Blizzard seeks judgment in the amount of $24,002,139, which is equivalent to the sum of $3,052,339 in disgorgement, $20,886,200 in statutory

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

damages and $63,600 in attorneys' fees, as set forth in the concurrently-filed Declaration of Bonnie Lau.

This motion is based upon this Notice, the attached Memorandum of Points and Authorities, the concurrently-filed Declarations of Greg Ashe and Bonnie Lau, the pleadings and files in this action, and such evidence and argument as may be presented at the hearing of this motion.

Respectfully submitted,

Dated:  June 18, 2010          SONNENSCHEIN NATH & ROSENTHAL LLP


By _____/s/ Bonnie Lau_____
                    BONNIE LAU

Attorneys for Plaintiff
BLIZZARD ENTERTAINMENT, INC.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

I.   INTRODUCTION ........................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................. 2

    A.   Blizzard's World of WarCraft™ Online Computer Game ................. 2

    B.   The World of WarCraft™ End User License Agreement ................. 4

    C.   The World of WarCraft™ Terms of Use ............................................ 5

    D.   Blizzard's Anti-Piracy Mechanisms .................................................. 6

    E.   Defendant's Unlawful Activities ........................................................ 9

    F.   Damages ............................................................................................. 15

III. DISCUSSION ............................................................................................ 16

    A.   Entry of Default Judgment is Proper. ................................................ 16

    B.   Defendant Should Be Held Liable For All Claims Asserted. ........... 17

        1.   Defendant Directly Infringes Blizzard's Copyrights by Copying the WoW Software into Random Access Memory Beyond the Scope of the EULA and TOU. ............ 17

    C.   Defendant is Secondarily Liable for its Contributory and Vicarious Infringement of WoW. .................................................... 21

    D.   Defendant's Scapegaming Servers, Which Enable WoW Players to Circumvent Blizzard's Technological Measures That Control Access to and Protect Blizzard's Copyrighted Software, Violate DMCA Sections 1201(a)(2) and 1201(b)(1). .................................................................................... 23

    E.   Defendant Breached The Terms Of The EULA And TOU. ............. 25

    F.   Defendant Tortiously Interfered With Blizzard's Contracts With WoW Players By Intentionally Promoting And Enabling Their Use Of Scapegaming Servers In Violation Of The WoW EULA And TOU. .......................................................... 27

    G.   Blizzard Is Entitled To Disgorge Defendant's Wrongful Profits. .............................................................................................. 28

    H.   Blizzard Is Also Entitled To Recover Statutory Damages. ............. 29

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1

**TABLE OF CONTENTS (cont.)**

2                                                                          **Page**

3

4        I.      The Court Should Award Blizzard Reasonable Attorneys'
                 Fees.................................................................................................30
5    IV.   CONCLUSION ...........................................................................................32

6

7

8

9

10

11

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 2:09-cv-7621-SVW-AJW                          MOTION FOR DEFAULT JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) .........................................................17, 21, 22, 23

*Altera Corp. v. Clear Logic, Inc.*,
424 F.3d 1079 (9th Cir. 2005) ............................................................................25

*Antione v. Atlas Turner, Inc.*,
66 F.3d 105 (6th Cir. 1995) ................................................................................17

*Davidson & Assocs. v. Jung*,
422 F.3d 630 (8th Cir. 2005) .......................................................................25, 26

*Davis v. Fendler*,
650 F.2d 1154 (9th Cir. 1981) ............................................................................17

*Harris v. Emus Records Corp.*,
734 F.2d 1329 (9th Cir. 1984) ............................................................................30

*LGS Architects, Inc. v. Concordia Homes of Nev.*,
434 F. 3d (9th Cir. 2006) ..............................................................................20, 21

*MAI Sys. v. Peak Computer, Inc.*,
991 F.2d 511 (9th Cir. 1993) ..................................................................18, 19, 24

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*
545 U.S. 913, 942 (2005) .............................................................................21, 22

*Microsoft Corp. v. McGee*,
490 F. Supp. 2d 874 (S.D. Ohio 2007) ...............................................................30

*Perfect 10, Inc. v. Amazon.com, Inc.*,
487 F.3d 701 (9th Cir. 2007) ..............................................................................21

*Polar Bear Prods. v. Timex Corp.*,
384 F.3d 700 (9th Cir. 2004) ..............................................................................29

*S.O.S., Inc. v. Payday, Inc.*,
886 F.2d 1081 (9th Cir.1989) .............................................................................17

*Sony Comp. Enter. Am., Inc. v. Filipiak*,
406 F. Supp. 2d 1068 (N.D. Cal. 2005) ..............................................................30

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## **TABLE OF AUTHORITIES (cont.)**

**Page(s)**

*TeleVideo Systems, Inc. v. Heidenthal,*
   826 F.2d 915 (9th Cir. 1987) ................................................................ 17

*Ticketmaster LLC v. RMG Techs., Inc.,*
   507 F. Supp. 2d 1096 (C.D. Cal. 2007) ............................ 18, 20, 24, 25

*Triad Sys. Corp. v. Se. Express Co.,*
   64 F.3d 1330 (9th Cir. 1995) ............................................................... 18

*Twentieth Century Fox Film Corp. v. Cablevision Sys. Corp.,*
   478 F. Supp. 2d 607 (S.D.N.Y. 2007) ................................................. 18

STATE CASES

*H&M Assoc. v. City of El Centro,*
   109 Cal. App. 3d 399 (1980) ................................................................ 27

*PG&E v. Brea Stearns,*
   50 Cal. 3d 1118 (1990) ......................................................................... 27

STATUTES

17 U.S.C. § 410(c) ...................................................................................... 18

17 U.S.C. § 501 ............................................................................................. 1

17 U.S.C. § 504(b) ................................................................................. 28, 29

17 U.S.C. § 505 ........................................................................................... 30

17 U.S.C. § 1201, et seq. ..................................................................... passim

17 U.S.C. § 1203, et seq. ............................................................. 23, 29, 30

OTHER AUTHORITIES

Fed. R. Civ. P. 55 ....................................................................................... 16

Local Rule 55 ............................................................................... 16, 17, 31

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Case No. 2:09-cv-7621-SVW-AJW                    MOTION FOR DEFAULT JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This is an action for injunctive relief, money damages and related relief against Defendant Alyson Reeves d/b/a Scapegaming ("Defendant"), who created and proliferated software, and operated a web server and several game servers, that unlawfully permitted access to copies of Plaintiff Blizzard Entertainment, Inc.'s ("Blizzard") interactive computer game World of WarCraft®.  Via the website scapegaming.com, Defendant actively marketed and promoted "scapegaming," a web server and several unauthorized game servers that enable and encourage third parties to play Blizzard's copyrighted World of Warcraft® online computer game on the Scapegaming servers instead of Blizzard's own authorized servers, thereby denying Blizzard subscription revenue for online play.  Defendant operated its Scapegaming business with knowledge that it was facilitating and promoting Scapegaming users to infringe Blizzard's copyright, circumvent its copyright protection technology, and breach their contracts with Blizzard.  Defendant's actions unjustly profited Defendant while causing significant damage to Blizzard.

The acts of Defendant, described in more detail below, constitute contributory, direct and indirect infringement of registered copyrights in violation of the Copyright Act, as amended, 17 U.S.C. § 501; circumvention of copyright protection systems in violation of the Digital Millennium Copyright Act ("DMCA"), as amended, 17 U.S.C. § 1201(a)(1)(A); trafficking in technology designed for the purpose of circumventing copyright protection systems in violation of the DMCA, as amended, 17 U.S.C. § 1201(a)(2) and (b)(1); breach of contract under the laws of the State of Delaware, and unfair competition and intentional interference with contractual relations under California law.

Blizzard filed the Complaint in this action on October 20, 2009.  Defendant was personally served with the Summons and Complaint on November 4, 2009, but never appeared or responded to the Complaint.  Accordingly, the Clerk

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   entered the default of Defendant on January 14, 2010.  By this motion, Blizzard

2   seeks entry of default judgment against Defendant in the amount of $24,002,139.

3   **II.    FACTUAL BACKGROUND**

4        **A.    Blizzard's World of WarCraft™ Online Computer Game**

5        Blizzard is a premier publisher of entertainment software.  Blizzard is best

6   known for its high-quality computer games, including the DIABLO®,

7   STARCRAFT® and WARCRAFT® gaming franchises.  Since establishing the

8   Blizzard label in 1994, Blizzard has quickly become one of the world's most

9   respected and popular makers of computer games.  Many of Blizzard's games

10  feature online game play over the Internet via an online gaming service provided

11  by Blizzard.  Over 11 million individuals actively play Blizzard's games online.

12  Declaration of Greg Ashe ("Ashe Decl."), at ¶ 2.

13       Blizzard's World of WarCraft™ ("WoW") is the company's most ambitious

14  and advanced online computer game.  WoW is a Massively Multiplayer Online

15  Roleplaying Game ("MMORPG"), a genre of computer game in which large

16  numbers of players interact with each other simultaneously in a virtual persistent

17  online world.  WoW allows players to experience the WARCRAFT® universe in

18  great detail, customizing their own experiences by participating in a variety of

19  different activities alone or with others.  *Id.* at ¶ 3.

20       World of Warcraft® allows players from around the globe to assume the

21  roles of different characters within the game as they explore, adventure and quest

22  across WoW's vast online world.  *Id.* at ¶ 4.

23       A central objective for players of WoW is to advance their characters

24  through the various levels recognized in the game, thereby accessing new content

25  in the WoW gaming environment as levels increase.  Leveling characters in WoW

26  requires an investment of time and effort playing the game.  *Id.* at ¶ 5.

27       World of Warcraft®, like other MMORPG games, derives revenue based on

28  a subscription fee model.  In order to experience the WoW gaming environment,

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-2-

consumers must obtain a legitimate version of the WoW game client software, and then make periodic payments for a subscription permitting them to continue accessing Blizzard's authorized WoW servers and playing in the authorized WoW gaming environment.  *Id.* at ¶ 6.

Unfortunately, the gaming experience of legitimate players of WoW is under near constant attack by cheaters, scammers, and other wrongdoers seeking to exploit WoW for their own illegitimate ends.  For this reason, Blizzard seeks to protect the sanctity of the WoW gaming experience through both contractual obligations and technical measures.  *Id.* at ¶ 7.

The software code responsible for the extensive and richly detailed creative elements forming the online world of the WoW gaming environment are copyrighted works owned by Blizzard.  *Id.* at ¶ 8.

Blizzard has received copyright registrations in both the server and game client software code.  *Id.* at ¶ 9, Exhibit A [Copyright Registration Numbers TXu 1-166-151, TX 5-984-004, and PA-1-247-131].

WoW uses a client-server model.  To access the online world, a user must have special software installed on his or her computer (the "WoW game client" or "game client").  *Id.* at ¶ 10.

The game client is specifically designed to work in combination only with computer servers maintained and operated by Blizzard.  *Id.* at ¶ 11.

Because the copyrighted content making up the WoW gaming environment is stored on both the WoW game client and the WoW game server, a user seeking access to the WoW gaming environment must have both an authorized game client and authorized access to a legitimate WoW game server.  *Id.* at ¶ 12.

The WoW game server is designed only to recognize legitimate, authorized game clients.  In turn, authorized game clients are specifically tailored to connect only with authorized servers.  *Id.* at ¶ 13.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

MOTION FOR DEFAULT JUDGMENT

Blizzard charges players a set monthly subscription fee for access to its authorized WoW servers.  *Id.* at ¶ 14.

Blizzard developed the WoW gaming environment through tremendous effort and at tremendous expense to the company, employing numerous game designers, artists, producers and programmers to conceive of and create a gaming experience that has appealed to millions of players worldwide.  *Id.* at ¶ 15.

### B.    The World of WarCraft™ End User License Agreement

Prior to playing WoW, users must install the game client on a personal computer. During that installation process, the game client displays a contract to the user called the World of WarCraft™ End User License Agreement ("EULA"). Ashe Decl, at ¶ 16, Exhibit B [EULA].

In order to install the game client, and again before playing the game for the first time, the user must manifest assent to the EULA by clicking on a button labeled "Accept."  The user also may decline to enter into this contract by clicking on a button labeled "Decline," at which point the game client will terminate, denying access to the user.  *Id.* at ¶ 17.

Any use of the WoW game client that is not in accordance with the EULA is expressly prohibited.  Among other provisions, the EULA contains an express limitation on the license, which provides that the user may not "in whole or in part, copy, photocopy, reproduce, translate, reverse engineer, derive source code from, modify, disassemble, decompile, or create derivative works based on the Game…."  See Ex. B, EULA para. 2(A).  *Id.* at ¶ 18.

The EULA also provides that the user may not "exploit the Game or any of its parts, including without limitation the Game Client, for any commercial purpose…"  EULA, para 2(C).  *Id.* at ¶ 19.

The EULA also provides that the user may not "host, provide or develop matchmaking services for the Game or intercept, emulate or redirect the communication protocols used by Blizzard in any way, for any purpose, including

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

without limitation unauthorized play over the internet, network play, or as part of content aggregation networks…."  See EULA para 2(F).  *Id.* at ¶ 20.

The EULA also provides that the user may not "facilitate, create or maintain any unauthorized connection to the Game or the Service, including without limitation (a) any connection to any unauthorized server that emulates, or attempts to emulate, the Service; and (b) any connection using programs or tools not expressly approved by Blizzard." See EULA para. 2(G).  *Id.* at ¶ 21.

The EULA also provides Blizzard with the right to deploy patches to the user's computer, stating "Blizzard may deploy or provide patches, updates and modifications to the Game that must be installed for the user to continue to play the Game.  Blizzard may update the Game remotely including without limitation the Game Client residing on the user's machine, without the knowledge of the user, and you hereby grant to Blizzard your consent to deploy and apply such patches, updates and modifications."  EULA para. 9.  *Id.* at ¶ 22.

The provisions of the EULA are designed to protect the integrity of the game.  *Id.* at ¶ 23.

**C.    The World of WarCraft™ Terms of Use**

Prior to playing WoW, users must create an account with Blizzard.  During that account creation process, Blizzard displays a contract to the user called the World of WarCraft™ Terms of Use (the "TOU").  Ashe Decl., at ¶ 24, Exhibit C [TOU].

In order to create a WoW account, the user must manifest assent to the TOU by clicking on a button labeled "Accept."  The user also may decline to enter into this contract by clicking on a button labeled "Decline," at which point the account creation process will terminate, denying access to the user.  *Id.* at ¶ 25.

Any use of the WoW game client or access to the WoW gaming environment that is not in accordance with the TOU is expressly prohibited. Among other provisions, the TOU provides that no one other than Blizzard shall

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

host, provide access to, or emulate the communication protocols used to create the WoW gaming environment.  Additionally, the TOU prohibits modifying WoW software, adding components to WoW, or using third-party programs for the purpose of hosting WoW.  The use of any tools to "hack or alter" WoW software also is specifically prohibited.  *Id.* at ¶ 26.

The provisions of the TOU are designed to protect the integrity of the game by, among other things, preventing the very conduct demonstrated by Defendant – developing pirated game servers to allow the unchecked use of pirated versions of the WoW game client.  *Id.* at ¶ 27.

The TOU also that the user may not "exploit the Game or any of its parts, including without limitation the Game Client, for any commercial purpose…"  See TOU para. 2(B).  *Id.* at ¶ 28.

The TOU also provide that the user may not "host, provide or develop matchmaking services for the Game or intercept, emulate or redirect the communication protocols used by Blizzard in any way, for any purpose, including without limitation unauthorized play over the internet, network play, or as part of content aggregation networks…."  See TOU para. 2(E).  *Id.* at ¶ 29.

The TOU also provides that the user may not "facilitate, create or maintain any unauthorized connection to the Game or the Service, including without limitation (a) any connection to any unauthorized server that emulates, or attempts to emulate, the Service; and (b) any connection using programs or tools not expressly approved by Blizzard."  See TOU para. 2(F).  *Id.* at ¶ 30.

**D.  Blizzard's Anti-Piracy Mechanisms**

Blizzard has received United States copyright registrations in both its game client software and its server software.  Ashe Decl., at ¶ 31 and Exhibit A.

Blizzard's copyright in the game client covers nearly all aspects of the game client as distributed, including without limitation (a) all of the human and machine readable computer code and any other data distributed as part of the game client,

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-6-

(b) all graphical and textual elements of the screens that appear in the game client when the same is executed on a personal computer, (c) all graphical and textual elements of documents distributed with the game client, and (d) all motion picture and sound recordings, and other audio-visual elements distributed with the game client. *Id.*

Because a substantial amount of the material that is used to create the WoW gaming environment resides in the copyrighted game client, and because the game client (like all software) is subject to unlimited copying over the Internet, Blizzard has implemented a number of technological measures to control access to the copyrighted elements in the game client. *Id.* at ¶ 32.

In order to play WoW, a user must first install and then "launch" the WoW client. *Id.* at ¶ 33.

After the game client has been installed, it must then interact with the WoW game server in order to create the online world and provide access to the copyrighted content of the WoW gaming environment. Game clients are pre-configured only to connect to Blizzard's WoW game server. Specifically, after the game client connects to the game server, the server examines a set of data from the game client that serves as a "digital fingerprint," allowing Blizzard to determine whether the game client attempting to communicate with the server is legitimate. *Id.* at ¶ 34.

The WoW client software cannot be used to play WoW without a connection to a server. *Id.* at ¶ 35.

Section 2 of the WoW EULA prohibits players from using non-Blizzard servers. *Id.* at ¶ 36, Exhibit B [EULA].

When the WoW client is launched, a copy of the program is loaded into the user's own computer's random access memory. Although players may load the executable portion of the game client into RAM prior to any authentication, the majority of the copyrighted content — the visual and aural content that make up

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-7-

the WoW game environment — are not loaded until after a player authenticates with Blizzard's WoW server. *Id.* at ¶ 37.

Blizzard only authorizes users to copy WoW into random access memory in conformity with the terms of its EULA and TOU. *Id.* at ¶ 38.

When users first attempt to launch the WoW game client, authenticate to the WoW game server, and access the copyrighted elements of the WoW gaming environment, they must demonstrate that they have purchased a valid license to play the game. *Id.* at ¶ 39.

Each authorized user is issued a unique 26-digit alphanumeric authentication code (the "Authentication Code") upon purchase of a license to play WoW. Prior to playing the game, users must create an account via a separate interface that requires them to enter their Authentication Code. Once the Authentication Code has been validated, the user must create a unique account username and password. Each Authentication Code can only be used to create one account, and the Authentication Code is permanently attached to that account after the account has been created. *Id.* at ¶ 40.

When the user runs the game client software, the game client displays a login screen in which the user must enter his or her unique account username and password. The client then sends information, including information derived from the username and password, to the server. If this information passes certain authentication tests, the server allows the player to access and experience the copyrighted material resident on the server, as well as opening access to the copyrighted material on the game client. *Id.* at ¶ 41.

As such, access to the copyrighted content on the game client is predicated on access to the authorized WoW server. In this way, the server "unlocks" the copyrighted information on the game client. *Id.* at ¶ 42.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

### E.   Defendant's Unlawful Activities

Defendant Alyson Reeves d/b/a Scapegaming until recently operated www.scapegaming.com, which served as a portal to a number of servers operated by scapegaming, designed to emulate the actual WoW game servers Blizzard operates.  Ashe Decl., at ¶ 43.

The Scapegaming servers emulated (mimicked) Blizzard's own World of Warcraft® servers, and enabled large-scale, multi-player online play of Blizzard Games.  The Scapegaming servers are not authorized by Blizzard.  *Id.* at ¶ 44.

On information and belief, Defendant, and others acting in concert with it, initially began development of unauthorized or rogue servers to accommodate players that wished to play World of Warcraft without paying a monthly fee.  *Id.* at ¶ 45.

Defendant had advertised its servers on the "Top 100" list of unauthorized WoW servers.  It included a link to: http://www.xtremetop100.com/in.php?site=1132192645 on its homepage and elsewhere on its website encouraging Scapegaming users to "vote" for Scapegaming as one of the "best" unauthorized servers in order to attract more users.  *Id.* at ¶ 46.

Defendant employed individuals as "game masters," or "GMs", "database" team members, "donations" supervisors, developers, and forum moderators to administer its servers and website.  *Id.* at ¶ 47.

Defendant offered five different servers to its users: WoWScape, WoWCrack,  WoWLegion, Battlescape, and PTR.  *Id.* at ¶ 48.

Defendant described its WoWScape server as a "funserver."  This "funserver" attempted to replicate the WoW online gaming experience, but at the same time allowed players to advance in WoW and obtain objects more quickly than Blizzard's authorized servers by offering 40x experience rates, 60x drop rates, custom gear and unscripted instances.  *Id.* at ¶ 49.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Defendant described its WoWCrack server as "Blizzlike High Rate." This "Blizzlike High Rate" server attempted to replicate the WoW online gaming experience Blizzard provides, but at the same time allows players to advance in WoW and obtain objects more quickly than Blizzard's authorized servers but not as quickly as the "funserver." *Id.* at ¶ 50.

Defendant described its WoWLegion server as "Blizzlike." This "Blizzlike" server was designed to replicate the WoW online gaming experience Blizzard provides on its authorized servers, allowing players to advance in WoW at only a slightly accelerated rate. *Id.* at ¶ 51.

Defendant described its Battlescape server as a "Pure PvP Realm," which attempted to replicate the "Player versus Player" battle realms that Blizzard provides on its authorized servers. Unlike Blizzard's servers, however, players using scapegaming's PvP realm were immediately assigned a high-level character that would take months to obtain on Blizzard's authorized servers. *Id.* at ¶ 52.

Defendant described its PTR server as a "Test Realm," which Scapegaming used to test new features. This test realm also attempted to replicate the WoW online gaming experience Blizzard provides. *Id.* at ¶ 53.

Defendant had also announced plans to offer another server that would attempt to replicate Blizzard's authorized servers as those servers existed several years ago, before Blizzard released its "Wrath of the Lich King" and "Burning Crusade" expansion packs. *Id.* at ¶ 54.

Playing WoW on a Scapegaming server, other than the Battlescape server, required the user to have a copy of World of Warcraft with Blizzard's Wrath of the Lich King expansion pack installed on their computer. The Battlescape server required the player to have World of Warcraft with Blizzard's Burning Crusade expansion pack installed. *Id.* at ¶ 55.

Blizzard did not authorize the Scapegaming servers and therefore their operation violated the express provisions of the EULA and TOU. *Id.* at ¶ 56.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Likewise, players' use of the Scapegaming servers exceeded the express license limitations set forth in the WoW EULA and TOU. *Id.* at ¶ 57.

Defendant was well aware that its activities were unauthorized, even going so far as to place a term in the Scapegaming Terms of Use designed to prevent Blizzard from discovering or receiving information about scapegaming's actions stating that: "No one from Blizzard, associated with Blizzard or any such affiliated company or anyone directed by Blizzard or its Related companies is permitted to enter these web sites or view any content contained within these sites at any time what so ever due to controversial reasons." *Id.* at ¶ 58.

On information and belief, the copies of World of Warcraft, and the Burning Crusade and Wrath of the Lich King expansion packs that had to be installed in order to access Scapegaming servers did not need to be authentic copies. *Id.* at ¶ 59.

On information and belief, unlike the authentic WoW game servers, the Scapegaming server never attempted to determine whether a game client connecting to it was legitimate. Instead, the Scapegaming server, as designed, allowed unauthorized versions of the game client to enter the WoW online world and access the copyrighted content residing on the game client. *Id.* at ¶ 60.

In addition, the Scapegaming server allowed any user to create an account without first submitting a Blizzard Authentication Code. *Id.* at ¶ 61.

The Scapegaming server thus allowed users to bypass the anti-piracy checks Blizzard has implemented that otherwise take place before the player may enter the WoW gaming environment. *Id.* at ¶ 62.

Absent rogue servers such as scapegaming, owners of pirated versions of the game client would have no ability to access the copyrighted WoW gaming environment. *Id.* at ¶ 63.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Blizzard did not authorized Scapegaming to provide servers nor did it authorize Scapegaming to create any derivative works based on its client or server software. *Id.* at ¶ 64.

Defendant was not authorized by Blizzard to modify or reverse engineer any WoW software, including the game client, or to use the game client in conjunction with a non-Blizzard server. *Id.* at ¶ 65.

On information and belief, Defendant and Scapegaming users bypassed the Authentication Code check required by the installation program and installed the pirated version of the game client on the hard drive of a computer for use in connecting to scapegaming's unauthorized servers. *Id.* at ¶ 66.

On information and belief, Defendant and Scapegaming users caused this pirated version of the game client to be installed and run on a computer, and in doing so viewed the EULA and TOU, and manifested assent to the EULA and TOU by clicking on the "Accept" button. *Id.* at ¶ 67.

On information and belief, during the course of developing the custom Scapegaming server emulation software, Defendant attempted to cause a pirated version of the game client to connect to the legitimate WoW game server. *Id.* at ¶ 68.

On information and belief, Scapegaming developed, maintained, and actively updated its own custom emulation software designed to replicate the WoW online experience. *Id.* at ¶ 69.

On information and belief, scapegaming's custom emulation software used content extracted and copied from the WoW client in order to replicate the WoW online experience. *Id.* at ¶ 70.

On information and belief, scapegaming's developers disassembled, decompiled, "packet sniffed" or otherwise reverse engineered portions of Blizzard's client and server software during the course of development of the Scapegaming server. *Id.* at ¶ 71.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   On information and belief, at all times during the course of development of

2   the Scapegaming server program, Defendant had specific knowledge that the

3   server program was being used to enable individuals who had obtained pirated

4   versions of the game client to access the game client and the copyrighted content

5   therein and that the server program would be used to enable individuals who had

6   obtained legitimate versions of the game client to access a WoW online game

7   experience in violation of the EULA and TOU.  *Id.* at ¶ 72.

8   Scapegaming also provided instructions to its users on how to "downpatch"

9   their WoW client programs.  *Id.* at ¶ 73.

10  "Downpatching" allowed users to downgrade their versions of WoW from

11  the latest version in order to make them compatible with unauthorized servers and

12  to avoid software controls that Blizzard implemented in new patches to prevent the

13  use of its client software on unauthorized servers.  *Id.* at ¶ 74.

14  In addition to providing instructions on how to "downpatch,"  Scapegaming

15  also provided links to pirated, older versions of the WoW game client designed to

16  work with its unauthorized servers and links to "alternative patching" files and

17  instructions that allow users to patch their game client without connecting to

18  Blizzard's server.  *Id.* at ¶ 75.

19  Links to pirated versions of World of Warcraft were posted for download on

20  the Scapegaming website.  *Id.* at ¶ 76.

21  Similarly, on July 29, 2009, "Justice," a "moderator" acting on behalf of

22  Scapegaming posted links to Blizzard's copyrighted patches for use in

23  downpatching Scapegaming users' copies of WoW without accessing Blizzard's

24  authentication servers.  *Id.* at ¶ 77.

25  Applying patches without connecting to Blizzard's server allowed users to

26  circumvent Blizzard's authentication software and patch pirated copies of WoW.

27  *Id.* at ¶ 78.

28

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

On July 26, 2009, "Peyton" (one of Defendant's aliases) announced that Scapegaming had plans to put up a new server or realm called "Chronicles" that would allow users to play an older version of World of Warcraft that did not include the popular Burning Crusade or Wrath of the Lich King expansion packs. *Id.* at ¶ 79.

On July 28, 2009, Scapegaming user "Beckon" posted links to pirated versions of World of Warcraft version 1.12.1 for download on the Scapegaming website.  WoW 1.12.1 is an older version of the game client that Beckon claims could be used with "Wowchronicles."  *Id.* at ¶ 80.

Due to Defendant's deliberate hosting, development, distribution, and promotion of the Scapegaming server, players around the world were able to use scapegaming's servers to access Blizzard's copyrighted content to play pirated copies of WoW and legitimate copies of WoW without paying monthly subscription fees.  *Id.* at ¶ 81.

The availability of unauthorized servers, like Scapegaming, that allow users with pirated versions of the game client to access Blizzard's copyrighted content on the game client without authorization contributed to demand for infringing copies of the game client on the Internet.  *Id.* at ¶ 82.

The availability of unauthorized copies, and the development of the pirated game servers designed to enable game play completely separate from the authorized WoW environment deprived Blizzard of the fruits of its labors in developing the WoW client and gaming environment.  *Id.* at ¶ 83.

Scapegaming unjustly profited from these unlawful acts by encouraging its users to make "donations" to fund its continued operation.  It encouraged these "donations" by providing "donors" with additional items that those "donors" could use on scapegaming's servers.  *Id.* at ¶ 84.

The "donations" solicited by Scapegaming appear to be thinly-veiled sales of virtual property and characters available in WoW.  *Id.* at ¶ 85.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

For example, on the "Funserver" players that "donated" to Scapegaming were able to choose from a range of items, ranging in cost from $1 (to advance their character 2 levels) to $300 for an "Ancient Pack #4" collection of a number of rare WoW items.  *Id.* at ¶ 86.

Most of the same items were available to players on the WoWLegion server, the server Scapegaming claimed was "Blizzlike," but at an increased cost.  For those players, prices ranged from $2 (to advance a character two levels), to $300 for a package containing a level 70 character with weapons, gold, and other advanced in game items.  *Id.* at ¶ 87.

On the WoWCrack server, which Scapegaming described as "High Rate Blizzlike," most of the same items were available for purchase as on the other two servers, ranging in price from $2 (to advance a character two levels) to $250 for a package containing a high level character, and assorted other advanced in game items and gold.  *Id.* at ¶ 88.

The virtual property, characters and other in-game rewards received by "donors" were and are Blizzard's intellectual property.  *Id.* at ¶ 89.

In order to gain access to gameplay using the advanced items available for purchase on the WoWLegion service on Blizzard's authorized servers, a United States' resident player would have paid a $14.99/month fee for many months in order to complete the tasks required to gain access to these items.  *Id.* at ¶ 90.

By using scapegaming's servers, players were able to obtain the use of those items in an in-game environment without paying Blizzard that monthly fee, resulting in millions of dollars in lost subscription fees.  *Id.* at ¶ 91.

**F.    Damages**

Based on records subpoenaed from PayPal Inc., between July 22, 2007 and September 26, 2009, Defendant conducted approximately 104,431 transactions and received approximately **$3,052,339** from players' "donations" and "Shopping Cart" transactions through scapegaming.com.  Ashe Decl., at ¶ 92; Declaration of

-15-

Bonnie Lau ("Lau Decl."), at ¶ 2.  Of those totals, 103,380 transactions and $3,036,273 were from "Shopping Cart" transactions, while 581 transactions and $16,126 were from "donations."  Ashe Decl., at ¶ 92; Lau Decl., at ¶ 2.

In addition, Blizzard has been forced to incur attorneys' fees and costs in the investigation and prosecution of this action.  Lau Decl., at ¶ 3.  Assuming a judgment of at least $3,000,000, the amount of reasonable fees would be fixed by Local Rule 55-3 in the amount of $63,600.  *Id.* at ¶ 3; *see* Local Rule 55-3 (for judgments greater than $100,000, attorneys' fees are fixed at "$5600 plus 2% of the amount over $100,000").

## III. <u>DISCUSSION</u>

### A. Entry of Default Judgment is Proper.

Federal Rule of Civil Procedure 55 authorizes the Court to enter default judgment, following the clerk's entry of default, against any defendant who has failed to appear, plead or otherwise respond to the complaint.  Fed. R. Civ. P. 55(b)(2).  Default judgment may not be entered against a defendant who is an infant, incompetent, in military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940.  *Id.*  Based on the Complaint and Declarations of Greg Ashe and Bonnie Lau, Blizzard has satisfied the conditions of Rule 55(b) by establishing that Defendant has failed to plead and meets no exception to default.

Here, Blizzard served the Complaint on Defendant on November 4, 2009, and filed the Proof of Service with this Court on January 11, 2010.  Lau Decl., ¶ 4.  Defendant has never appeared in this action nor responded to the Complaint.  *Id.* at ¶ 5.  Therefore, on January 11, 2010, Blizzard filed with this Court a Request to Enter Default, attached to which as Exhibit A was a true and accurate copy of the Proof of Service.  *Id.* at ¶ 6.  Pursuant to Blizzard's Request, the Clerk entered default against Defendant on January 14, 2010.  The certificate of the Clerk of this

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   Court as to the entry of default is attached to the Lau Declaration as Exhibit A.

2   *Id.* ¶ 7, Ex. A.

3          Counsel for Blizzard is informed and believes that Defendant is not a minor,

4   incompetent, in military service, or otherwise exempted from default judgment

5   under the Soldiers' and Sailors' Civil Relief Act of 1940.  *Id.* at ¶ 8.

6          **B.     Defendant Should Be Held Liable For All Claims Asserted.**

7          Upon default, the well-pleaded factual allegations of the complaint are taken

8   as true.  *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987);

9   *see also Antione v. Atlas Turner, Inc.*, 66 F.3d 105, 110-11 (6th Cir. 1995)

10  (holding that once a default is entered against a defendant, "that party is deemed to

11  have admitted all of the well pleaded allegations in the complaint").  The Court

12  may base its judgment entirely on the submitted declarations, and may dispense

13  with a formal hearing on the motion.  Local Rule 55-2; *Davis v. Fendler*, 650 F.2d

14  1154, 1161-62 (9th Cir. 1981).  Thus, the default of Defendant operates, as a

15  matter of law, as an admission by Defendant of the material allegations of the

16  Complaint.  By this motion, Blizzard respectfully requests that the Court hold

17  Defendant liable on all causes of action and enter default judgment against

18  Defendant in the amount of $24,002,139.

19             **1.     Defendant Directly Infringes Blizzard's Copyrights**
20                     **by Copying the WoW Software into Random Access**
                       **Memory Beyond the Scope of the EULA and TOU.**

21          In order to establish a claim of direct copyright infringement, a plaintiff

22  must prove: 1) ownership of a copyright; and 2) a " 'copying' of protectable

23  expression. . . beyond the scope of [a] license."  *S.O.S., Inc. v. Payday, Inc.*, 886

24  F.2d 1081, 1085 (9th Cir.1989) (citation omitted); *A&M Records, Inc. v. Napster,*

25  *Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001).  In this case, Blizzard has secured

26  copyright registrations in both the WoW server and WoW game client software

27  code.  Ashe Decl., ¶ 9, Ex. A.  These certificates of registration presumptively

28  satisfy the first element of copyright infringement.  17 U.S.C. § 410(c).

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-17-

In this Circuit, the "copying" element may be proved in software cases by showing an unauthorized reproduction of a copyrighted software program in the computer user's Random Access Memory ("RAM").  The Ninth Circuit has recognized that "the loading of software into the RAM creates a copy under the Copyright Act."  *MAI Sys. v. Peak Computer, Inc.*, 991 F.2d 511, 519 (9th Cir. 1993), *cert. dismissed* 510 U.S. 1033 (1994); *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1334 (9th Cir. 1995); *see also Twentieth Century Fox Film Corp. v. Cablevision Sys. Corp.*, 478 F. Supp. 2d 607, 621 (S.D.N.Y. 2007) (agreeing with the "numerous courts [that] have held that the transmission of information through a computer's random access memory or RAM . . . creates a 'copy' for purposes of the Copyright Act," and citing cases).  When such a copy is made in excess of a license, the copier is liable for copyright infringement.  *Ticketmaster LLC v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1107 (C.D. Cal. 2007) ("When a licensee exceeds the scope of the license granted by the copyright holder, the licensee is liable for infringement.") (citation omitted).

The allegations of Blizzard's Complaint, now deemed true, establish that users must load the WoW game client from their hard drive into their computers' RAM, at which point the game is able to be both perceived and communicated, including interaction with the various Scapegaming servers that replicate Blizzard's own WoW servers.  Ashe Decl., ¶¶ 33-42, 44-45, 55-57.  When a user first launches WoW, the executable located in the WoW game client is loaded into RAM, and as they move through the game, additional copyrighted game content is loaded from the WoW game client into RAM as the player reaches points in the game with which that content is associated.  *Id*. at ¶¶ 33-42.  Playing WoW on a Scapegaming server, rather than on one of Blizzard's own servers, requires the user to have a copy of the WoW game client installed on their computer.  *Id*. at ¶¶ 33-36, 39.  Clearly, Scapegaming users' loading of the WoW game client into RAM creates a copy for purposes of the Copyright Act.  *Mai Systems*, 991 F.2d at

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-18-

519 ("since we find that the copy created in the RAM can be 'perceived, reproduced, or otherwise communicated,' we hold that the loading of software into the RAM creates a copy under the Copyright Act." (citation omitted)).

WoW players' authority to use the WoW client is governed by the terms of the WoW End User License Agreement ("EULA"). In order to play WoW, users must read and assent to the terms of both the EULA and the Terms of Use ("TOU"). Ashe Decl., ¶¶ 16-30, Exs. B and C. The EULA clearly conditions users' ability to copy WoW on their doing so within the scope of the license. *Id.* at ¶¶ 18-22. Copying WoW into RAM in conjunction with creating, hosting, or using unauthorized Scapegaming servers plainly exceeds the scope of the EULA and TOU, which conditions authorized copying as follows:

- Paragraph 2(A) of the EULA provides that the user may not "in whole or in part, copy, photocopy, reproduce, translate, reverse engineer, derive source code from, modify, disassemble, decompile, or create derivative works based on the Game…." *Id.* at ¶ 18.

- Paragraph 2(C) provides that the user may not "exploit the Game or any of its parts, including without limitation the Game Client, for any commercial purpose…" *Id.* at ¶ 19.

- Paragraph 2(F) provides that the user may not "host, provide or develop matchmaking services for the Game or intercept, emulate or redirect the communication protocols used by Blizzard in any way, for any purpose, including without limitation unauthorized play over the internet, network play, or as part of content aggregation networks…." *Id.* at ¶ 20.

- Paragraph 2(G) provides that the user may not "facilitate, create or maintain any unauthorized connection to the Game or the Service, including without limitation (a) any connection to any unauthorized server that emulates, or attempts to emulate, the Service; and (b) any connection using programs or tools not expressly approved by Blizzard." *Id.* at ¶ 21.

- Paragraph 2(B) of the TOU provides that the user may not "exploit the Game or any of its parts, including without limitation the Game Client, for any commercial purpose…" *Id.* at ¶ 31.

- Paragraph 2(E) provides that the user may not "host, provide or develop matchmaking services for the Game or intercept, emulate or redirect the communication protocols used by Blizzard in any way, for any purpose, including without limitation unauthorized play over the internet, network play, or as part of content aggregation networks…." *Id.* at ¶ 32.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Case No. 2:09-cv-7621-SVW-AJW                                    MOTION FOR DEFAULT JUDGMENT

- Paragraph 2(f) provides that the user may not "facilitate, create or maintain any unauthorized connection to the Game or the Service, including without limitation (a) any connection to any unauthorized server that emulates, or attempts to emulate, the Service; and (b) any connection using programs or tools not expressly approved by Blizzard." *Id.* at ¶ 33.

- Finally, the TOU provides that no one other than Blizzard shall host, provide access to, or emulate the communication protocols used to create the WoW gaming environment. Additionally, the TOU prohibits modifying WoW software, adding components to WoW, or using third-party programs for the purpose of hosting WoW. The use of any tools to "hack or alter" WoW software also is specifically prohibited. *Id.* at ¶ 28.

Plainly, that Defendant developed, hosted, and administered unauthorized servers to enable unauthorized large-scale, multi-player play of WoW violates the express terms of the EULA and TOU. Ashe Decl., ¶ 56. Likewise, Scapegaming users are forbidden from using third-party programs to emulate or host WoW and their use of Scapegaming servers with the WoW game client exceeds the scope of authorized copying and license limitations under the EULA and TOU. *Id.* at ¶ 57. Indeed, Defendant included a term in the Scapegaming Terms of Use that seeks to prevent Blizzard from entering its websites or viewing any content contained therein, thereby conceding that Defendant's activities were unauthorized. *Id.* at ¶ 58. Finally, Defendant sought to exploit WoW for commercial purposes by encouraging its users to make "donations" and purchase advanced game items; Blizzard has pled, on the basis of records subpoenaed from Paypal, Inc., that Defendant unjustly profited from its unauthorized activities and received approximately $3,052,339 from players' "donations" and "Shopping Cart" transactions. *Id.* at ¶¶ 83-92.

Defendant's and Scapegaming users' copying of WoW in circumstances exceeding their license is copyright infringement. *LGS Architects, Inc. v. Concordia Homes of Nev.,* 434 F. 3d at 1150, 1156 (9th Cir. 2006). For example, in *Ticketmaster*, the court held that using a bot program to access and download copies of copyrighted web pages into RAM in order to purchase large quantities of tickets — where the use of bots for this purpose was prohibited by the website's

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-20-

terms of use — infringed Ticketmaster's copyrights. *Id*. at 1102-03, 1109-10. Here, Defendant and WoW players similarly agreed not to create, administer or use third-party applications to launch WoW, not to connect to any emulated servers, and not to exploit WoW for commercial use. Thus, when users played WoW on any of scapegaming's unauthorized servers, they exceeded the scope of their license, and infringed Blizzard's copyrights. Default judgment should be entered against Defendant on Blizzard's first cause of action for copyright infringement.

### C.   Defendant is Secondarily Liable for its Contributory and Vicarious Infringement of WoW.

Under the traditional test for contributory copyright infringement, a party is liable where it had "knowledge of the infringing activity and induce[d], cause[d], or materially contribute[d] to the [activity]." *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 727 (9th Cir. 2007); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001). In *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, the Supreme Court held that a software distributor also induces infringement where its product is used to infringe copyrights "if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses." 545 U.S. 913, 942 (2005) (citation omitted). Under either of these formulations, Defendant plainly is liable for Scapegaming users' repeated infringements.

First, Defendant's awareness of the EULA and TOU terms and facilitation, support and encouragement of Scapegaming users' infringements evidences knowledge of the infringing conduct. Ashe Decl., ¶¶ 58, 67, 72. Second, Defendant's contribution to the infringement was not merely material, it was essential. But for Defendant, Scapegaming users would have been unable to bypass the Authentication Code requirement, utilize pirated versions of WoW game client, access the copyrighted WoW game experience, and thereby exceed the EULA. *Id*. at ¶¶ 60-63. Defendant developed and administered the unauthorized Scapegaming servers, enabled users to play WoW without paying a monthly fee,

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-21-

permitted users to advance in WoW and obtain objects more quickly than Blizzard's authorized servers, facilitated and even encouraged (through "downpatches" and direct download links) the use of pirated versions of the WoW game client, and provided ongoing support to Scapegaming users to enable repeated infringements. *Id.* at ¶¶ 43-82.  Finally, even absent Defendant's contributions, under the alternate *Grokster* test Scapegaming is incapable of commercially significant noninfringing uses since it existed, exclusively, to replicate the WoW online world and infringe Blizzard's copyrights.  Accordingly, Defendant's enabling of and aid to Scapegaming users' infringements clearly conferred contributory liability.  *Grokster, Ltd.*, 545 U.S. at 915 ("active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe"); *Napster*, 239 F.3d at 1022 ("'[w]ithout the support services defendant provides, Napster users could not find and download the music they want with the ease of which defendant boasts'" (citation omitted)).

In addition, a party is vicariously liable for the infringement of another if it has a right and ability to control the infringing activity and derives a direct financial benefit from that activity.  *Grokster*, 545 U.S. at 931 n.9; *Napster*, 239 F.3d at 1023.  Here, Defendant maintained control over all existing Scapegaming servers, and had the right and ability to control the infringement by disabling the servers that enabled Scapegaming users to play WoW and exceed the scope of their license.  Ashe Decl., ¶¶ 43-57; *Napster*, 239 F.3d at 1023 ("Napster's ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise").  Defendant also received a direct financial benefit from the infringements, as scapegaming's enablement of infringement is its only draw, Scapegaming users made regular purchases and "donations" to fund Defendant's continued operation, and Defendant profited generously from such transactions to the tune of approximately $3,000,000.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   Ashe Decl., ¶¶ 83-92; *Napster*, 239 F.3d at 1023 (financial benefit exists where

2   ability to infringe increases draw of service).  The Court should therefore enter

3   default judgment against Defendant on Blizzard's second cause of action for

4   contributory and vicarious copyright infringement.

**D.   Defendant's Scapegaming Servers, Which Enable WoW Players to Circumvent Blizzard's Technological Measures That Control Access to and Protect Blizzard's Copyrighted Software, Violate DMCA Sections 1201(a)(2) and 1201(b)(1).**

That Defendant's developed, administered and marketed Scapegaming

servers violates the DMCA's bans on trafficking in technology that circumvents

*access controls* to copyrighted works, and *technological measures that protect the*

*rights of a copyright owner.*  17 U.S.C. §§ 1201(a)(2), (b)(1) (emphases added).

Section 1201(a)(2) reads:

> No person shall . . . offer to the public, provide, or otherwise traffic in any
> technology, product . . . that (A) is primarily designed or produced for the
> purpose of circumventing a technological measure that *effectively controls*
> *access to a work protected under this title*; (B) has only limited
> commercially significant purpose or use other than to circumvent a
> technological measure that effectively *controls access to a work protected*
> *under this title*; or (C) is marketed by that person or another acting in
> concert with that person with that person's knowledge for use in
> circumventing a technological measure that *effectively controls access to*
> *a work protected under this title*.

17 U.S.C. § 1201(a)(2)-(a)(2)(c) (emphases added).  Section 1201(b)(1)(A) applies

this same ban on products aimed at circumventing "protection afforded by a

technological measure that *effectively protects a right of a copyright owner under*

*this title in a work or a portion thereof*."

The DMCA states that "a technological measure 'effectively controls access

to a work' if the measure, in the ordinary course of its operation, requires the

application of information, or a process or a treatment, with the authority of the

copyright owner, to gain access to the work." 17 U.S.C.A. § 1201(a)(3)(B).  Here,

Blizzard's anti-piracy technology was designed to prohibit WoW users from

experiencing the WoW game experience unless they logged in to the Blizzard

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-23-

WoW server using (a) an updated, unmodified WoW game client; and (b) a user account created using a valid Authentication Code.

In order to play WoW, a user must first install and then "launch" the WoW game client, which is designed to connect only to Blizzard's servers. Ashe Decl., ¶¶ 33-36. The WoW game client software cannot be used to play WoW without a connection to an authorized Blizzard server unless it has been modified contrary to the terms of the EULA. *Id.* at ¶¶ 35-36. Nor can it be used without a unique 26-digit alphanumeric authentication code, and a unique account username and password. Only if the users' information passes certain authentication tests does the server allow the game client to enter the WoW gaming environment. *Id.* at ¶¶ 39-42. These anti-piracy mechanisms effectively control access to WoW.

Blizzard's technological measures also protect Blizzard's right to prevent unauthorized copying of WoW. Because loading a program into RAM constitutes copying for purposes of copyright law, loading WoW in excess of Blizzard's authorization under the WoW EULA violates Blizzard's exclusive right to make copies of WoW. *See Mai Systems*, 991 F.2d at 518-19. Although players may load the executable portion of the game client into RAM prior to any authentication, the majority of the copyrighted content — the visual and aural content that make up the WoW game environment — are not loaded until after a player authenticates with Blizzard's WoW server. Ashe Decl., at ¶ 37.

The court in *Ticketmaster* recognized that a computer program called a CAPTCHA, which required inputting a series of randomly generated characters to prevent users from running bots to access Ticketmaster's otherwise publicly available website (and copy the content into their computers' RAM in a manner that violated its Terms of Use), "both *control[led] access* to a protected work [under § 1201(a)(2)] because a user cannot proceed to copyright protected webpages without solving CAPTCHA, and *protect[ed] rights* of a copyright owner [under § 1201(b)(1)] because, by preventing automated access to the ticket

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-24-

purchase webpage, CAPTCHA prevents users from copying those pages."  507 F. Supp. 2d 1096, 1112 (C.D. Cal. 2007).  Here, Blizzard's anti-piracy mechanisms performed the near identical function to protect users from accessing WoW in a similarly unauthorized manner.  Thus, Blizzard's technological measures likewise effectively protected both access under Section 12(a)(2) and its exclusive rights to make copies under section 1201(b)(1).

Moreover, making a program available for download from a website constitutes trafficking for purposes of the DMCA.  *Davidson & Assocs. v. Jung*, 422 F.3d 630, 637 (8th Cir. 2005).  Plainly, Defendant's Scapegaming servers were *designed* to circumvent Blizzard's anti-piracy and unauthorized play measures.  Indeed, Defendant constantly updated the Scapegaming servers (or instructed users how to "downpatch" their WoW game clients) to ensure its continued success in cracking Blizzard's evolving access control technologies.  Ashe Decl., ¶¶ 60-83.  Defendant also *marketed* the Scapegaming servers as unauthorized WoW servers, and offered a forum for its employees and other WoW users to share information on using pirated copies of the WoW game client and avoiding detection by Blizzard.  *Id.* at ¶¶ 58, 69-83.  Finally, Scapegaming has little to no commercially significant purpose other than to circumvent Blizzard's anti-piracy technologies and enable unauthorized play of WoW.  Accordingly, Blizzard is entitled to default judgment on its DMCA claim.  *See Ticketmaster*, 507 F.Supp.2d at 111-12.

### E.    Defendant Breached The Terms Of The EULA And TOU.

The Court should also enter default judgment against Defendant on Blizzard's breach of contract claim.  To play WoW, all users — including Defendant — must view and demonstrate acceptance of the EULA and TOU at numerous times.   Ashe Decl., ¶¶ 16-17, 24-25.  Such "click-wrap agreements" are readily recognized as enforceable contracts.  *Altera Corp. v. Clear Logic, Inc.,* 424 F.3d 1079, 1092 (9th Cir. 2005) (software license agreements are valid contracts

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

for purposes of a tortious interference claim); *Davidson & Assocs. v. Jung*, 422 F.3d at 639 (enforcing Blizzard's clickwrap terms for its online gaming offerings).

Here, as explained in detail above, Defendant developed, maintained, and actively updated its own custom emulation software designed to replicate the WoW online experience using scapegaming's unauthorized servers. Ashe Decl., ¶ 69. Defendant's emulation software used content extracted and copied from the WoW client in order to replicate the WoW online experience. *Id.* at ¶ 70. Defendant attempted to "reverse engineer" Blizzard's copyrighted server software in order to develop and maintain its custom emulation software. In addition, Defendant's developers disassembled, decompiled, "packet sniffed" or otherwise reverse engineered portions of Blizzard's client and server software during the course of development of the Scapegaming server. *Id.* at ¶ 71. Defendant's Scapegaming servers enabled individuals to use pirated versions of the game client (or legitimate versions of game client without payment of monthly subscription fees) and access copyrighted content therein in violation of the EULA and TOU. *Id.* at ¶ 72. Defendant also exploited WoW and the Scapegaming servers for commercial purposes, soliciting and obtaining "donations" from Scapegaming users in an amount totaling approximately $3,000,000. *Id.* at ¶ 92. Specifically, Defendant's activities violated the following terms of the EULA and TOU:

- Paragraph 2(A) of the EULA, which provides that the user may not "in whole or in part, copy, photocopy, reproduce, translate, reverse engineer, derive source code from, modify, disassemble, decompile, or create derivative works based on the Game…." *Id.* at ¶ 18.

- Paragraph 2(C), which provides that the user may not "exploit the Game or any of its parts, including without limitation the Game Client, for any commercial purpose…" *Id.* at ¶ 19.

- Paragraph 2(F), which provides that the user may not "host, provide or develop matchmaking services for the Game or intercept, emulate or redirect the communication protocols used by Blizzard in any way, for any purpose, including without limitation unauthorized play over the internet, network play, or as part of content aggregation networks…." *Id.* at ¶ 20.

- Paragraph 2(G), which provides that the user may not "facilitate, create or maintain any unauthorized connection to the Game or the

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-26-

Service, including without limitation (a) any connection to any unauthorized server that emulates, or attempts to emulate, the Service; and (b) any connection using programs or tools not expressly approved by Blizzard." *Id.* at ¶ 21.

- Paragraph 2(B) of the TOU, which provides that the user may not "exploit the Game or any of its parts, including without limitation the Game Client, for any commercial purpose…" *Id.* at ¶ 31.

- Paragraph 2(E), which provides that the user may not "host, provide or develop matchmaking services for the Game or intercept, emulate or redirect the communication protocols used by Blizzard in any way, for any purpose, including without limitation unauthorized play over the internet, network play, or as part of content aggregation networks…." *Id.* at ¶ 32.

- Paragraph 2(f), which provides that the user may not "facilitate, create or maintain any unauthorized connection to the Game or the Service, including without limitation (a) any connection to any unauthorized server that emulates, or attempts to emulate, the Service; and (b) any connection using programs or tools not expressly approved by Blizzard." *Id.* at ¶ 33.

Defendant's knowing and brazen breaches of the EULA and TOU merit entry of default judgment on Blizzard's breach of contract claim.

**F.    Defendant Tortiously Interfered With Blizzard's Contracts With WoW Players By Intentionally Promoting And Enabling Their Use Of Scapegaming Servers In Violation Of The WoW EULA And TOU.**

To establish a tortious interference claim, Blizzard must establish that there is a valid contractual relationship between Blizzard and the WoW players, and that Defendant (1) knew about the contract; (2) interfered with it; (3) intended to induce its breach; (4) caused its breach; and (5) caused resulting damages to Blizzard. *PG&E v. Brea Stearns*, 50 Cal. 3d 1118, 1126 (1990); *H&M Assoc. v. City of El Centro*, 109 Cal. App. 3d 399, 405 (1980).

Here, there was plainly a valid contract between Blizzard and WoW players. All WoW players, without exception, enter into a valid and enforceable contractual relationship with Blizzard by agreeing to Blizzard's EULA and TOU. Ashe Decl., ¶¶ 16-17, 24-25.  Defendant was aware of these contracts, as Alyson Reeves (and all other Scapegaming employees) personally assented to them in the creation of her (their) own WoW accounts and/or when the WoW game client was

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-27-

installed on their computers.  *Id.* at ¶¶ 17, 25.  Defendant's intent to interfere with the contracts between Blizzard and World of Warcraft users is plainly evident. The Scapegaming servers had no viable use other than to permit unauthorized play of WoW.  *Id.* at ¶¶ 43-58.  As described previously herein, use of the Scapegaming servers in conjunction with WoW violated multiple provisions of both the EULA and the TOU.  Indeed, Defendant's own advertisements and Terms of Use recognized its servers as "unauthorized WoW servers," *id.* at ¶ 46, and sought to conceal its improper activities and website content from Blizzard.  *Id.* at ¶ 58. Defendant's interference was patently improper, since it existed solely to facilitate unlawful copyright infringement, the Scapegaming servers served no business purpose other than to exploit the WoW game, and Defendant unjustly profited at Blizzard's expense by at least $3,000,000.  *Id.* at ¶¶ 83-92.  At bottom, Defendant's entire business depended upon its ability to induce WoW users to breach the EULA and TOU.  Finally, the breaches of the EULA and TOU caused substantial economic and other harm to Blizzard.  By using scapegaming's servers, WoW players were able to obtain the use of those items in an in-game environment without paying Blizzard monthly fees, resulting in millions of dollars in lost subscription fees.  *Id.* at ¶¶ 90-91.  Blizzard also incurred direct costs related to improving anti-piracy technology, policing use of unauthorized servers and responding to user complaints.  Default judgment on Blizzard's tortious interference claim is therefore proper.

### G.   Blizzard Is Entitled To Disgorge Defendant's Wrongful Profits.

The Copyright Act allows a plaintiff to entitled to disgorge "any profits of the infringer that are attributable to the infringement."  17 U.S.C. § 504(b). Blizzard has the burden of proving that the profits are attributable to the infringement, and what the gross revenues from the infringing work were.  *Id.* The burden then shifts to Defendant to prove what deductions can be taken from those gross revenues to arrive at the profits number.  *Id.* ("In establishing the

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."); *see also Polar Bear Prods. v. Timex Corp*., 384 F.3d 700, 711 (9th Cir. 2004).

Here, based on records subpoenaed from PayPal Inc., between July 22, 2007 and September 26, 2009, Defendant conducted approximately 104,431 transactions and received approximately **$3,052,339** from players' "donations" and "Shopping Cart" transactions through scapegaming.com. Ashe Decl., at ¶ 92; Lau Decl., at ¶ 2. Of those totals, 103,380 transactions and $3,036,273 were from "Shopping Cart" transactions, while 581 transactions and $16,126 were from "donations." Ashe Decl., at ¶ 92; Lau Decl., at ¶ 2. Thus, Defendant's gross revenues from Scapegaming sales are over $3 million. As explained above, Scapegaming had little to no commercially significant purpose other than to infringe Blizzard's copyrighted works, circumvent Blizzard's anti-piracy technologies and enable unauthorized play of WoW. The $3,000,000 transacted through scapegaming.com was derived *exclusively* from Defendant's commercial exploitation of WoW via the Scapegaming servers. Accordingly, the entire $3,052,339 solicited and obtained by Defendant through scapegaming.com is "attributable to the infringement" and must be disgorged.

## H. Blizzard Is Also Entitled To Recover Statutory Damages.

Blizzard also requests that the Court award statutory damages on its DMCA claims pursuant to 17 U.S.C. § 1203, as set forth below.

17 U.S.C. § 1203(c) provides that Blizzard may elect actual or statutory damages for Defendant's violations of §§ 1201(a)(2) and 1201(b)(1) "[a]t any time before final judgment is entered[.]" 17 U.S.C. § 1203(c)(3)(A). Section 1203(c)(3)(A) provides that each violation of section 1201 results in an award of "not less than $200 or more than $2,500 per act of circumvention, device, product,

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-29-

component, offer, or performance of service, as the court considers just."
Based on the records subpoenaed from PayPal, Inc., players conducted 104,431
transactions through scapegaming.com between July 22, 2007 and September 26,
2009.  Each transaction should be considered an "act of circumvention" or
"performance of service" under the statute, and accordingly, each transaction
should constitute a separate DMCA violation for purposes of calculating damages
under § 1203(c)(3)(A).  *Sony Comp. Enter. Am., Inc. v. Filipiak*, 406 F. Supp. 2d
1068, 1074 (N.D. Cal. 2005) (§ 1203(c)(3)(A) "authorizes a separate award of
statutory damages for each [sale]").  Because the Court is required to award
"not less than $200" per violation, the minimum statutory damages award for
Defendant's DMCA violations, assuming 104,431 transactions, is $20,886,200.
*See* Ashe Decl., at ¶ 92; Lau Decl., at ¶ 2; *see generally, Harris v. Emus Records
Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) (in copyright context, "the court has
wide discretion in determining the amount of statutory damages to be awarded,
*constrained only by the specified maxima and minima*") (emphasis added).

### I.    The Court Should Award Blizzard Reasonable Attorneys' Fees.

Blizzard also seeks to recover its reasonable attorneys' fees, which a court
should award to the prevailing party particularly where the infringement is willful.
17 U.S.C. § 505.  Although the court has discretion as to whether to award
attorneys' fees to the prevailing party, most courts award attorneys' fees to the
prevailing party as a matter of course.  Here, given Defendant's knowledge from
the near inception of its business that Blizzard objected to and sought to prohibit
operation of the Scapegaming servers, Defendant's conduct was clearly willful.
*Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 880 (S.D. Ohio 2007) (defendant
willfully infringed where plaintiff sent letters explaining that the activities were
unlawful and defendant continued to distribute the infringing software).  Indeed,
Defendant was well aware that its infringing activities were unauthorized.  This
awareness is underscored by a provision in the Scapegaming Terms of Use —

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-30-

"No one from Blizzard, associated with Blizzard or any such affiliated company or anyone directed by Blizzard or its Related companies is permitted to enter these web sites or view any content contained within these sites at any time what so ever due to controversial reasons," Ashe Decl., at ¶ 58 — which sought to shield its willful infringement and unlawful conduct from Blizzard's scrutiny.

In light of Defendant's willful infringement, this Court should award Blizzard, the prevailing party, its reasonable attorneys' fees fixed in accordance with Local Rule 55-3.  For judgments over $100,000, Local Rule 55-3 prescribes attorneys' fees in the amount of "$5600 plus 2% of the amount over $100,000." Assuming a minimum judgment here of $3,000,000, the amount of fees should be calculated as follows:  $5600 + (2% x $2,900,000) = $63,600.  Lau Decl., at ¶ 3. The Court should therefore award Blizzard a minimum of $63,600 in reasonable attorneys' fees.

///

///

///

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Case No. 2:09-cv-7621-SVW-AJW                                    MOTION FOR DEFAULT JUDGMENT

## IV. CONCLUSION

Defendant's creation, promotion, and support of Scapegaming servers encouraged and enabled a significant community of WoW players to infringe Blizzard's copyrights, breach their contracts, and conceal their harmful acts from Blizzard, all to the detriment of rule-abiding players and Blizzard's premier product and good name.  For the reasons set forth above, Blizzard respectfully requests that its Motion for Default Judgment be granted.  The Court should enter default judgment on behalf of plaintiff Blizzard Entertainment, Inc. against defendant Alyson Reeves, d/b/a Scapegaming and order immediate payment of $24,002,139 in disgorgement, statutory damages and attorneys' fees.

Respectfully submitted,

Dated:  June 18, 2010

SONNENSCHEIN NATH & ROSENTHAL LLP

By _____/s/ Bonnie Lau_____
BONNIE LAU

Attorneys for Plaintiff
BLIZZARD ENTERTAINMENT, INC.

27344294

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300