UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BLIZZARD ENTERTAINMENT, INC., | ) | CV 09-7621 SVW (AJWx) |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING PLAINTIFF'S |
| v. | ) | MOTION FOR DEFAULT JUDGMENT |
| | ) | [24] AND ORDERING SUBMISSION OF |
| ALYSON REEVES, D/B/A SCAPEGAMING, | ) | FURTHER BRIEFING AND EVIDENCE |
| and Does 1-5, inclusive, | ) | REGARDING DAMAGES |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.  Introduction

Plaintiff Blizzard Entertainment, Inc. ("Plaintiff" or "Blizzard") filed this action on October 20, 2009, alleging (among other things) copyright infringement, Digital Millennium Copyright Act violations and breach of contract against Defendant Alyson Reeves d/b/a Scapegaming ("Defendant" or "Reeves"). Defendant was personally served with the Complaint on November 4, 2009, but has not appeared in this action or timely answered the Complaint. The Court Clerk entered default against Defendant on January 14, 2010. Plaintiff now seeks a default judgment awarding $24,002,139 in disgorgement, statutory damages and attorney's fees.

## II.   Factual Background

Plaintiff is a publisher of entertainment software and has released many popular computer games. (Compl. ¶ 8.) One of the games that Plaintiff produces, World of Warcraft, involves large numbers of players interacting with each other simultaneously in a virtual persistent online world. (Compl. ¶ 9.) World of Warcraft's revenue is based on a subscription fee model, which involves consumers first purchasing a legitimate version of the World of Warcraft game client software and then also making periodic subscription payments. (Compl. ¶ 12.)  Paying for the subscription allows consumers to access Plaintiff's authorized World of Warcraft servers in order to play the game online. (Compl. ¶ 30.)  Plaintiff owns copyright registrations for the code of both the game client software and the servers. (Compl. ¶ 15.) Furthermore, consumers must agree to two contracts before they are able to play the game. The first is the End User License Agreement, which users are required to agree to before they can install the game client software on their computers. (Compl. ¶ 22-31.) The second is the Terms of Use, which users must agree to before they can create their World of Warcraft user account, and which is necessary to have in order to log on to Plaintiff's legitimate World of Warcraft servers. (Compl. ¶ 32-39.) Plaintiff has an anti-piracy system in place which prevents users from playing World of Warcraft without owning a legitimate copy of the game client software and/or without paying their periodic subscription fee. This anti-piracy system consists of Plaintiff's legitimate World of Warcraft servers detecting and authenticating information from a user's game client software and user account when the user attempts to log on to a World of Warcraft server. (Compl. ¶

2

40-52.)  This ensures that only those who have paid their periodic subscription fee and own legitimate game client software are able to access the "locked" copyrighted materials on the server and game client. (<u>Id.</u>)

Defendant operated a website, www.scapegaming.com, that served as a portal to five different servers, also operated by Defendant, that mimicked Plaintiff's World of Warcraft servers. (Compl. ¶ 53.) Plaintiff never authorized the development and upkeep of these servers by Defendant.(Compl. ¶ 54.) In the course of developing and operating the servers, Defendant: allowed users to play World of Warcraft without paying Plaintiff the subscription fee; allowed users to play World of Warcraft without a legitimate copy of the software game client; allowed users to bypass the anti-piracy mechanisms that Plaintiff implemented; "reverse engineered" portions of Plaintiff's client and server code in order to emulate the World of Warcraft experience on her illegitimate servers; and encouraged users to make "donations" to fund the servers' continued operation.  (Compl. ¶ 53-104.)  Furthermore, Defendant demonstrated knowledge that her activities were unauthorized by including a term in Scapegaming's Terms of Use designed to prevent Plaintiff from discovering information about Defendant's activities. (Compl. ¶ 68.)

On October 20, 2009, Plaintiff filed its Complaint against Defendant. The complaint alleged seven causes of action: (1) copyright infringement, 17 U.S.C. § 501(a); (2) contributory copyright infringement, 17 U.S.C. § 501(a); (3) violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201(A)-(B); (4) breach of contract (End User License Agreement); (5) breach of contract (Terms Of

1  Use); (6) Unfair Competition under California Law; (7) Intentional
2  Interference with Contractual Relations.
3      On November 4, 2009, Defendant was served with the Complaint by
4  personal service. [Docket No. 6.] Defendant's answer was due on
5  November 25, 2009. (Id.) Defendant failed to timely answer or otherwise
6  appear in this action. On January 14, 2010, Plaintiff requested default
7  against Defendant, which was entered by the Court Clerk on January 14,
8  2010. [Docket No. 13.] Plaintiff now seeks a default judgment against
9  Defendant, and an award of $3,052,339 in disgorgement, $20,886,200 in
10 statutory damages, and $63,600 in attorneys' fees.

11

12 **III. Analysis**

13     **A.   Legal Standard**

14     "A party seeking a default judgment must state a claim upon which
15 it may recover." Philip Morris USA, Inc. v. Castworld Prods., Inc.,
16 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citing PepsiCo Inc. v. Cal. Sec.
17 Cans, 238 F. Supp. 2d 1172 (C.D. Cal. 2002)).  When reviewing a motion
18 for default judgment, the Court must accept the well-pleaded
19 allegations of the complaint relating to liability as true.  TeleVideo
20 Systems Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).  If the
21 plaintiff is seeking money damages, however, the plaintiff must "prove-
22 up" its damages.  See SCHWARZER, TASHIMA, AND WAGSTAFFE, FEDERAL CIVIL PROCEDURE
23 BEFORE TRIAL § 6:81 (Rutter Group) (2010 supp.); Federal R. Civ. Proc.
24 55(b).  The plaintiff is required to provide evidence of its damages,
25 and the damages sought must not be different in kind or amount from
26 those set forth in the complaint.  Philip Morris USA, Inc., 219 F.R.D.
27 at 498. When "proving-up" damages, admissible evidence (including
28

witness testimony) supporting . . . damage calculations is usually required. See FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 6:94.1 (citing Stephenson v. El-Batrawi, 524 F.3d 907, 917 (8th Cir. 2008)).

The Ninth Circuit has enumerated seven factors that the Court should consider in deciding whether to grant default judgment: (1) the possibility of prejudice to the Plaintiff, (2) the merits of Plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

**B.   Application of the Eitel Factors**

On balance, the Eitel factors weigh in favor of granting default judgment.

**1.   Possibility of Prejudice to Plaintiff**

As the Defendant has not appeared in this action, a default judgment is the only means available for compensating Plaintiff for Defendant's infringement.  If the Court does not enter a default judgment, it will allow Defendant to avoid liability by not responding to Plaintiff's claims.

**2.   Merits of Plaintiff's Claims**

As stated above, the Court must accept the well-pleaded allegations in the Complaint as true for purposes of a default judgment. However, in its motion for default judgment, Plaintiff only seeks damages based on two of its original claims: Copyright Infringement and Violation of the Digital Millennium Copyright Act.

1   (Pl.'s Mot., at 28-30 [Docket No. 24]). Consequently, the Court will

2   limit its review to these two claims. As discussed in the next section,

3   Plaintiff's Complaint is sufficient to succeed on the merits of both of

4   these claims.

5           **3.   Sufficiency of the Complaint**

6       The first claim that Plaintiff seeks damages for is Copyright

7   Infringement under 17 U.S.C. § 501(a).  To succeed on this claim,

8   Plaintiff must show: (1) ownership of a valid copyright, and (2)

9   copying of constituent elements of the work that are original.  See

10  Feist Pubs. Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340,

11  361 (1999).

12      Plaintiff's Complaint adequately alleges its ownership of the

13  copyrights for the code of the software game client and the World of

14  Warcraft servers.  (Compl. ¶ 15.) Furthermore, Plaintiff alleges that

15  its copyright in the game client covers the audio-visual elements of

16  the software. (Compl. ¶ 41.) Such allegations are sufficient to

17  establish a copyright in the audio-visual elements of the software (as

18  separate from the programming code of the software). See David Nimmer,

19  1 NIMMER ON COPYRIGHT § 2.18[H][3][b](2010 supp.) (content of video games

20  is copyrightable) (collecting cases); Raymond T. Nimmer, 1 INFORMATION

21  LAW § 4.21 (2010 supp.) (same) (collecting cases). Plaintiff also

22  adequately alleges the copying of original constituent elements by

23  alleging that the code of the game client software must be loaded onto

24  the Random Access Memory ("RAM") of a user's computer (including

25  Defendant's) when the user plays World of Warcraft. (Compl. ¶ 47, 51.)

26  "The loading of software into the RAM creates a copy under the

27  Copyright Act." MAI Sys. v. Peak Computer, Inc., 991 F.2d 511, 519 (9th

28

Cir. 1993). Furthermore, "if a person is not authorized by the copyright holder (through a license) . . . to copy the software to RAM, the person is guilty of copyright infringement because the person has exercised a right (copying) that belongs exclusively to the copyright holder." MDY Industries, LLC v. Blizzard Entertainment, Inc., No. CV-06-2555-PHX-DGC, 2008 WL 2757357, at *3 (D. Ariz. July 14, 2008). Players of World of Warcraft receive limited licenses to use the copyrighted content in the game client and servers by agreeing to the End User License Agreement and Terms of Use. See id. at *4-6. By playing World of Warcraft on Defendant's servers, users (including Defendant) have breached the terms of the End User License Agreement and Terms of Use and consequently exceeded the scope of their limited license. (Compl. ¶ 22-39); see also MDY, 2008 WL 2757357 at *6 (holding that user's breach of Blizzard's End User License Agreement and Terms of Use was an act outside the scope of their limited license). Thus, by playing World of Warcraft and copying the copyrighted content of the game client code into their computer's RAM, users (including Defendant) violate Plaintiff's exclusive right to "copy" its copyrighted work. Plaintiff has thus adequately alleged that Defendant copied original elements of a copyrighted work. Having adequately alleged both elements, Plaintiff has a meritorious claim for copyright infringement under 17 U.S.C. § 501(a).

Plaintiff's second claim for which it seeks damages, is Defendant's alleged violation of the Digital Millennium Copyright Act. The act provides that:

> No person shall . . . offer to the public, provide, or otherwise
>
> traffic in any technology, product . . . that (A) is primarily

designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title; (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title. 17 U.S.C. § 1201(a)(2).  Under 17 U.S.C. § 1201(b)(1), the act applies the same ban to products aimed at circumventing "protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof." The only difference between § 1201(a)(2) and § 1201(b)(1) is that the former focuses on circumventing measures that control access to a copyrighted work while the latter focuses on circumventing measures that protect the rights of copyright owners.

Plaintiff has alleged each of the necessary elements required by the statute. First, Plaintiff has alleged that Defendant was offering or trafficking her product (the illegitimate servers) to the public by providing access to them through her website, scapegaming.com. (Compl. ¶ 53, 125.) Plaintiff has also alleged that Defendant's servers were primarily designed to allow users to circumvent the anti-piracy mechanisms that effectively control access to Plaintiff's copyrighted works. (Compl. ¶ 126.) Specifically, Plaintiff alleges that the Defendant's illegitimate servers allow users to access the copyrighted material in the software game client without checking if the user has

legitimate game client software or whether they have paid their subscription fee. (Comp. ¶ 55, 70-74.)  Plaintiff also alleges that Defendant's illegitimate servers have no commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a copyrighted work. (Compl. ¶ 127.) Plaintiff also alleges that Defendant marketed its work for use in circumventing a technological measure that effectively controls access to its copyrighted works. (Comp. ¶ 128.) Specifically, Plaintiff alleges that Defendant advertised on the "Top 100" list of unauthorized World of Warcraft servers and encouraged users to vote for scapegaming.com in order to attract more users. (Compl. ¶ 56.)

Consequently, Plaintiff's complaint sufficiently alleges grounds for Defendant's violation of 12 U.S.C. § 1201(a)(2). These same allegations are sufficient grounds to hold Defendant liable for violating 12 U.S.C. § 1201(b) as well, since Plaintiff's anti-piracy mechanisms protect the exclusive rights of the copyright owner (Plaintiff) as much as they effectively control access to a copyrighted work (World of Warcraft). (Compl. ¶ 126-28.); See Ticketmaster L.L.C. v. RMG Techs., Inc., 507 F. Supp. 2d. 1096, 1112 (C.D. Cal. 2007)(holding that circumventing a defensive measure similar to the one at issue here gave rise to liability under both 12 U.S.C §1201(a)(2) and §1201(b)(1)).

Consequently, Plaintiff's Complaint is sufficient to state meritorious claims for both Copyright Infringement and Digital Millennium Copyright Act Violations and it is entitled to receive damages on both claims.

### 4.   Sum of Money At Stake

Plaintiff seeks a total of no less than $24,002,139, which constitutes $3,052,339 in disgorgement, $20,886,200 in statutory damages and $63,600 in attorneys' fees.  This is an extremely large sum, especially considering that Defendant is an individual and her profits from her illegal activities amount to only one-eighth of the total damages that Plaintiff seeks.  The amount of damages requested will be discussed further below.

### 5.   Possibility of Disputes Concerning Material Facts

The Defendant has not appeared in this action or asserted any defenses.  Taking the allegations of the Complaint as true, there is no possibility of a dispute concerning material facts.

### 6.   Whether Default Was Due to Excusable Neglect

Defendant was personally served with the Complaint but did not respond.  Defendant has made no showing of excusable neglect.

### 7.   Policy Favoring Decision on the Merits

The policy favoring resolution of the case on the merits always weighs against default judgment.  On balance, however, the other _Eitel_ factors outweigh the general policy in favor of a resolution on the merits.  Further, because Defendant was on notice of the Complaint as of November 4, 2009, she has had an adequate opportunity to defend herself in this action or otherwise respond to the Complaint.

### C.   Requested Relief

### 1.   Disgorgement

Plaintiff seeks damages in the amount of $3,052,339 to recover the profits which Defendant obtained through operating her website and servers. The Copyright Act, 17 U.S.C. § 504(b) permits the copyright

owner to disgorge "any profits of the infringer that are attributable to the infringement." "The copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." Id.

Here, Plaintiff has alleged that the "donations" to the scapegaming.com website are profits attributable to Defendant's infringement. (Compl. ¶ 98-100, 103.) Defendant has not shown any deductible expenses or elements of the profit that were attributable to factors other then the copyrighted work. Consequently, Plaintiff is entitled to any profits that Defendant made which are attributable to her infringement.

However, Plaintiff must still "prove-up" these damages, and as of now has not provided the court sufficient evidentiary support for the amount of damages. When proving-up damages, "admissible evidence (including witness testimony) supporting . . . damage calculations is usually required." FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 6:94.1 (citing Stephenson v. El-Batrawi, 524 F.3d 907, 917 (8th Cir. 2008)).  In an attempt to prove its damages, Plaintiff relies on a declaration from its own Manager of Business Intelligence stating that he is "informed and believe[s] that, based on records subpoenaed from PayPal, Inc., . . . . Defendant . . . received approximately $3,052,339 from players' 'donations' and 'Shopping Cart' transactions through scapegaming.com." (Ashe Decl. ¶ 92; see also Lau Decl. ¶ 1 (same).)  The Federal Rules of Evidence require testimony to be based on personal knowledge, not "information and belief."  See Fed. R. Evid. 602; see also Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1412 (9th Cir. 1995).  Additionally, the

declarant's testimony about a third party's business records constitutes hearsay and Plaintiff has not laid a sufficient foundation for this hearsay to be admitted. Fed. R. Evid. 803(6). Likewise, it is improper for the declarant to testify about written records instead of submitting the original records or copies thereof. Fed. R. Evid. 1002, 1003; see also Fed. R. Evid. 1004 (noting exceptions to this rule). To the extent that the testimony is meant as a summary of "voluminous writings . . . which cannot conveniently be examined in court," the testimony fails to satisfy the specific requirements of that rule. Fed. R. Evid. 1006.

Consequently, Plaintiff's current evidentiary submission is insufficient to prove that Plaintiff is entitled to $3,052,339 in disgorgement. (See Ashe Decl. ¶ 1, 92.) Accordingly, the Court must "conduct [a] hearing[]" in order to "determine the amount of damages" that Plaintiff may recover. Fed. R. Civ. P. 55(b)(2)(B). Plaintiff is therefore ORDERED to appear for an evidentiary hearing on August 17, 2010, at 9:00 a.m. Consistent with the Court's general procedures, Plaintiff must submit declarations and documentary evidence prior to the scheduled hearing date.[1] The Court anticipates that these documentary submissions, if uncontroverted and adequately authenticated, will be sufficient to allow the Court to dispense with a

---

[1] Specifically, the Court's standing Trial Preparation Order provides: Counsel . . . in non-jury trials shall submit the direct testimony of their witnesses in writing in the format of a declaration subject to the penalties of perjury. These declarations shall be in admissible form with appropriate foundations established for the declarant's statements. Paragraphs in each declaration shall be numbered consecutively so as to facilitate the identification of paragraphs for evidentiary objections.
(Trial Preparation Order at 4.)

1  live evidentiary hearing.

2          **2.   Statutory Damages**

3      Plaintiff also seeks $20,886,200 in statutory damages based on

4  Defendant's violations of the Digital Millennium Copyright Act.  The

5  Act states that: "A person committing a violation of section 1201 or

6  1202 is liable for either (A) the actual damages and any additional

7  profits of the violator . . . or (B) statutory damages as provided in

8  paragraph (3)."  17 U.S.C. § 1203(1).  Regarding statutory damages, the

9  Act states: "At any time before final judgment is entered, a

10  complaining party may elect to recover an award of statutory damages

11  for each violation of section 1201 in the sum of not less than $200 or

12  more than $2,500 per act of circumvention, device, product, component,

13  offer, or performance of service, as the court considers just." 17

14  U.S.C. § 1203(c)(3)(A).

15      Plaintiff argues that "[b]ased on the records subpoenaed from

16  PayPal, Inc., players conducted 104,431 transactions through

17  scapegaming.com between July 22, 2007 and September 26, 2009."

18  Furthermore, Plaintiff argues that each of these transactions "should

19  be considered an 'act of circumvention' or 'performance of service'

20  under the statute, and accordingly, each transaction should constitute

21  a separate [Digital Millennium Copyright Act] violation for purposes of

22  calculating damages under § 1203(c)(3)(A)."  This damages theory, if

23  adopted by the Court and supported by admissible evidence, would

24  provide Plaintiff an award of $20,886,200 ($200 x 104,431).

25      The Court agrees with Plaintiff that Plaintiff is entitled to at

26  least **some** statutory damages under §1203(c)(3)(A) on account of

27  Defendant's violations of 17 U.S.C. 1201(a)(2) and (b)(1). (See Pl.'s

28

Mot., at 30 [Docket No. 24]). However, the Court does not presently agree with Plaintiff's theory of damages under §1203(c)(3)(A). The Court recognizes that each transaction a user conducts on Defendant's servers could potentially be an "act of circumvention" or "performance of service" under the statute. However, Plaintiff has relied on 104,431 "transactions" that are monetary transactions through PayPal consisting of "players' 'donations' and 'Shopping Cart' transactions through scapegaming.com." (Id. at 29.) These PayPal transactions do not appear to be "acts of circumvention" or "performances of service" that circumvent copyright-protection measures.  These PayPal transactions do not reflect the number of times that Plaintiff's anti-piracy mechanisms have been by-passed or the number of times that Defendant's servers performed their infringing services for users. Rather, the quantity of transactions reflects the number of times people have **paid money** to Defendant – an act that is separate from a user's act of **accessing Defendant's servers**.

Plaintiff appears to be relying on an analogy to Ninth Circuit case-law regarding computer chips used to circumvent the anti-piracy mechanisms of the Sony Playstation and Sony Playstation 2. In those cases, however, the sale records on which the courts based their Digital Millennium Copyright Act statutory damage calculations were close approximations of the number of "devices" sold by the defendants. The courts were able to identify the number of acts of infringement (i.e., each sale of a computer chip used to circumvent the plaintiff's copyrights) by taking the defendant's total profit and dividing it by the average sale price per chip. See Sony Computer Entertainment America, Inc. v. Filipiak, 406 F. Supp. 2d 1068, 1073-74 (N.D. Cal.

2005); <u>Sony Computer Entertainment America, Inc. v. Divineo, Inc.</u>, 457 F. Supp. 2d 957, 966-67 (N.D. Cal. 2006). But here, because the sale of "devices" is not at issue, Defendant's profits and number of PayPal transactions do not seem to offer a valid estimate of instances of circumvention supporting statutory damages under the Digital Millennium Copyright Act. Thus unless Plaintiff can identify case-law that supports its statutory damages theory more strongly, the Court cannot agree that it can base a Digital Millennium Copyright Act statutory damages calculation on the number of Defendant's monetary transactions.[2]

However, the Court is sympathetic to the potential difficulty Plaintiff faces in calculating the number of "acts of circumvention" performed on Defendant's servers. The nature of Defendant's circumventing activities renders them far less susceptible to calculation then the computer chip devices discussed *supra*. Furthermore, the Court recognizes that "[t]he ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary." <u>United States v. New York, N.H & H.R. Co.</u>, 355 U.S. 253, 256 n.5 (1957); <u>see also</u> <u>ITSI T.V. Prods., Inc. v. Agricultural Ass'ns</u>, 3 F.3d 1289, 1292 (9th Cir. 1993) ("[W]hen the true facts relating to a disputed issue lie peculiarly within the knowledge of one party, the burden of proof may properly be assigned to that party in the interest of fairness.") (internal quotations and punctuation omitted).  This

---

[2]  Even if Plaintiff is able to convince the Court to use this theory, Plaintiff still faces the same evidentiary issues discussed *supra* with respect to "proving-up" the number of transactions supporting an award of statutory damages.

rule applies equally, if not more so, in the context of default
judgment.  See Shanghai Automation Instr. Co. v. Kuei, 194 F. Supp. 2d
995, 1004 (N.D. Cal. 2001); see also Henry v. Sneiders, 490 F.2d 315,
317 (9th Cir. 1974) (noting in default judgment action that "[a]ny
insufficiency of the plaintiff's evidence was a direct result of
appellant's refusal to comply with a legitimate request for
discovery."). Defendant knows the true facts regarding the number of
"acts of circumvention," and has made it difficult for Plaintiff to
establish this number by failing to appear in the action. Consequently,
aside from finding supporting case law for the statutory damages theory
it has already advanced, Plaintiff is invited to identify other
statutory damage theories and other supporting evidence that would
entitle them to statutory damages under 17 U.S.C. § 1203(c)(3)(A).

**3. Attorney's Fees**

Plaintiff also seeks $63,000 in attorneys' fees. Plaintiff may
seek attorney's fees in connection with a default judgment, where the
plaintiff is entitled to such fees by contract or statute.  Local Rule
55-3. Pursuant to 17 U.S.C. § 505, the Court may award reasonable
attorneys' fees to the prevailing party. Courts are more likely to
grant attorneys' fees when the infringement is willful. Microsoft Corp.
v. McGee, 490 F. Supp. 2d 874, 880 (S.D. Ohio 2007). Infringement is
"willful" when one "'recklessly disregards' a copyright holder's
rights, even if lacking actual knowledge of infringement." 4 NIMMER ON
COPYRIGHT §14.04[B][3][a]; see also Jackson v. Sturkie, 255 F. Supp. 2d
1096, 1101 (N.D. Cal. 2003).  "Such reckless disregard can be inferred
from . . . other circumstances--a good example being that the defendant
has defaulted".  4 NIMMER ON COPYRIGHT § 14.04[B][3][a].

By defaulting, Defendant has shown a reckless disregard for Plaintiff's rights. Defendant has even included a Term on its website's Terms of Use prohibiting Plaintiff from using the website. (Compl. ¶ 68.) Thus, the Court concludes that Defendant's infringement was willful and Plaintiff is entitled to recover attorneys' fees pursuant to 17 U.S.C. § 505.  The amount of the award will be determined following Plaintiff's further submissions to "prove-up" its damages.

**IV.  Conclusion**

For the foregoing reasons, the Court GRANTS Plaintiff's Motion. Plaintiff is therefore ORDERED to appear for an evidentiary hearing regarding damages on August 17, 2010, at 9:00 a.m.  Plaintiff must submit declarations and documentary evidence eight days prior to the scheduled hearing date.  Plaintiff is further ORDERED to file no later than August 9, 2010 a supplemental memorandum regarding the legal bases for Plaintiff's statutory damages request.

IT IS SO ORDERED.

DATED:    July 22, 2010

STEPHEN V. WILSON

UNITED STATES DISTRICT JUDGE