FELIX WOO (State Bar No. 208107)
fwoo@sonnenschein.com
BONNIE LAU (State Bar No. 246188)
blau@sonnenschein.com
SONNENSCHEIN NATH & ROSENTHAL LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300
Facsimile: (213) 623-9924

Attorneys for Plaintiff
BLIZZARD ENTERTAINMENT, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLIZZARD ENTERTAINMENT, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>ALYSON REEVES, D/B/A SCAPEGAMING, and DOES 1 through 5 inclusive,<br><br>    Defendants. | Case No. 2:09-cv-7621-SVW-AJW<br><br>PLAINTIFF BLIZZARD ENTERTAINMENT, INC.'S SUPPLEMENTAL MEMORANDUM FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT ALYSON REEVES, D/B/A SCAPEGAMING<br><br>[Fed. R. Civ. P. 55(b)(2)<br><br>Date:     August 17, 2010<br>Time:     9:00 a.m.<br>Place:    Courtroom 6<br>Before:   Hon. Stephen V. Wilson |

## I. INTRODUCTION

This Court concluded that "Plaintiff's Complaint is sufficient to state meritorious claims for both Copyright Infringement and Digital Millennium Copyright Act Violations and it is entitled to receive damages on both claims," in its July 22, 2010 Order Granting Plaintiff Blizzard Entertainment, Inc.'s ("Plaintiff" or "Blizzard") Motion for Default Judgment against Defendant Alyson Reeves d/b/a Scapegaming ("Defendant"). *See* Order at 9:23-26. To support an award of damages, the Court has requested Blizzard to submit further briefing and evidence to (1) "prove-up" the damages for Copyright Infringement based on disgorgement of Defendant's profits; (2) further explain Blizzard's statutory damages theory under the Digital Millennium Copyright Act; and (3) "prove-up" the number of transactions supporting the award of statutory damages. *Id.* at 11:13-15, 15:26-28, 16:11-13.

Blizzard submits this Supplemental Memorandum and the concurrently-filed Declarations of Bonnie Lau and Russell M. Shumway, and, based on this additional briefing and evidence, requests that the Court enter default judgment against Defendant in the amount of $24,002,139.00.

## II. DISCUSSION

### A. The Court Should Disgorge The $3,052,339 in Profits Attributable to Defendant's Copyright Infringement.

This Court has found that Blizzard's "Complaint adequately alleges its ownership of the copyrights for the code of the software game client and the World of Warcraft ["WoW"] servers," and that Blizzard had established a meritorious claim for copyright infringement under 17 U.S.C. § 501(a). Order at 7:19-22. All that needs to be determined at this stage is the appropriate amount of damages to be awarded.

A plaintiff who successfully establishes a copyright infringement claim is entitled to disgorge "any profits of the infringer that are attributable to the

infringement." 17 U.S.C. § 504(b).  As noted, Blizzard has the burden of presenting proof of Defendant's gross revenues from the infringement, while Defendant has the burden of proving any deductible expenses.  Order at 11:2-5. The Court held that "[Blizzard] is entitled to any profits that Defendant made which are attributable to her infringement," but requested that Blizzard "prove-up" these damages by providing additional evidentiary support.  *Id*. at 11:10-15.

To substantiate the requested profits to be disgorged from Defendant, Blizzard has concurrently filed a Declaration of Bonnie Lau attaching the following exhibits:  (1) a Declaration of Custodian of Records from third party PayPal Inc. ("PayPal") laying a foundation for PayPal's business records relating to accounts associated with Defendant Alyson Reeves, d/b/a Scapegaming, and (2) a compact disc (CD) containing a true and correct copy of the entire original document production subpoenaed from PayPal.  Lau Decl., ¶ 3, Exs. B-C.

In addition, Blizzard has concurrently filed a Declaration of Russell M. Shumway explaining the methodology used to select PayPal transaction records to include in Blizzard's calculation of Defendant's profits, and attaching an Excel spreadsheet summarizing Defendant's profits from 2006 to 2009.  Shumway Decl., ¶¶ 2-4, Ex. A.  Blizzard's review of PayPal's transaction records was based on the following methodology:  (1) under the field title "TYPE," Blizzard included all PayPal transaction records described as "Donation Received" or "Shopping Cart Payment Received"; (2) under the field title "STATUS," Blizzard included any transactions listed as "Completed," but excluded any transactions listed as "Cancelled" or "Reversed" to ensure that Blizzard excluded all transactions where Scapegaming may have refunded players' donations or payments; and (3) Blizzard totaled the currency field "GROSS" to calculate Defendants' total gross receipts from players' donations and Shopping Cart transactions.  *Id.* at ¶ 3.  Based on the above methodology, and as Blizzard's Excel spreadsheet summarizing Defendant's profits demonstrates, between July 22, 2007 and September 26, 2009,

1  Defendant conducted 104,431 PayPal transactions and received **$3,052,339** from
2  players' "donations" and "Shopping Cart" transactions through scapegaming.com.
3  *Id.* at ¶ 4, Ex. A.  Of those totals, 103,380 transactions and $3,036,273 were from
4  "Shopping Cart" transactions, while 581 transactions and $16,126 were from
5  "donations."  *Id.*

6  As explained in Blizzard's moving papers, Scapegaming had no
7  commercially significant purpose other than to infringe Blizzard's copyrighted
8  works, circumvent Blizzard's anti-piracy technologies and enable unauthorized
9  playing of WoW.  Defendant's **$3,052,339** in gross revenues transacted through
10 scapegaming.com was derived *exclusively* from Defendant's commercial
11 exploitation of WoW via the Scapegaming servers.  Defendant has not provided the
12 Court with any evidence of her deductible expenses, nor is any such information
13 reasonably accessible to Blizzard.  Accordingly, the entire **$3,052,339** solicited
14 and obtained by Defendant through scapegaming.com is "attributable to the
15 infringement" and must be disgorged.

### B. The Court Should Award $20,886,200 in Statutory Damages For Defendant's Violations Of DMCA Sections 1201(a)(2) and (b)(1).

18 The Digital Millennium Copyright Act ("DMCA") bans on trafficking
19 in technology that circumvents access controls to copyrighted works, and
20 technological measures that protect a copyright owner's rights.  17 U.S.C.
21 §§ 1201(a)(2), (b)(1).  This Court held that Blizzard has "alleged each of the
22 necessary elements required by the statute," and therefore, sufficiently alleged
23 grounds for Defendant's violation of 17 U.S.C. sections 1201(a)(2) and (b)(1)
24 "since [Blizzard's] anti-piracy mechanisms protect the exclusive rights of the
25 copyright owner ([Blizzard]) as much as they effectively control access to a
26 copyrighted work ([WoW])."  Order at 8:18-19, 9:12-22.

27 Having successfully demonstrated a claim for Defendant's violations of
28 sections 1201(a)(2) and (b)(1), Blizzard is entitled to obtain statutory damages

-3-

Case No. 2:09-cv-7621-SVW-AJW                                      SUPPLEMENTAL MEMORANDUM
                                                                   FOR ENTRY OF DEFAULT JUDGMENT

pursuant to 17 U.S.C. § 1203. Order at 13:25-27. 17 U.S.C. section 1203(c)(3)(A) provides that a successful DMCA plaintiff should be awarded "*not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just.*" *See also Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) (under the DMCA, "the court has wide discretion in determining the amount of statutory damages to be awarded, *constrained only by the specified maxima and minima*") (emphases added).

As this Court has acknowledged, "each transaction a user conducts on Defendant's servers could potentially be an 'act of circumvention' or 'performance of service' under the statute." Order at 14:3-5. The Court, however, expressed concern with Blizzard's reliance on counting individual monetary transactions — PayPal's "donation" and "Shopping Cart" transaction records — as the basis for calculating the number of times Defendant bypassed Blizzard's anti-piracy mechanisms and performed infringing services. *Id.* at 14:5-16. It found this case distinguishable from *Sony Computer Entertainment America, Inc. v. Filipiak*, 406 F. Supp. 2d 1068 (N.D. Cal. 2005) ("*Filipiak*"), and *Sony Computer Entertainment America, Inc. v. Divineo, Inc.,* 457 F. Supp. 2d 957 (N.D. Cal. 2006) ("*Divineo*"), and invited Blizzard to either further explain its theory of damages or identify an alternative theory. Order at 14:17-15:10, 16:9-13.

In *Filipiak* and *Divineo*, the courts relied upon sales records for computer chips used to circumvent the anti-piracy mechanisms of the Sony Playstation and Sony Playstation 2, to approximate the number of "devices" sold by the defendants and calculate a commensurate award of statutory damages under the DMCA. *Filipiak*, 406 F. Supp. 2d at 1074-76; *Divineo,* 457 F. Supp. 2d at 966-67. The act of purchasing the devices (*ie.,* payment of money) was separate from the user's act of playing the Sony Playstation (*ie*., accessing the Defendant's servers), yet the courts found the two acts sufficiently linked to merit an award of statutory damages, in part because "the sole function of [the devices] is to circumvent the

authentication process of the PlayStation systems." *Divineo,* 457 F. Supp. 2d at 960. Thus, *Filipiak* and *Divineo* instruct that the sale of a device that presumptively will be used to access the Defendant's servers is tantamount to an "act of circumvention" under the DMCA, and a proper basis for an award of statutory damages. *Filipiak*, 406 F. Supp. 2d at 1075; *Divineo,* 457 F. Supp. 2d at 67.

Likewise, here, each player "donation" and "Shopping Cart" transaction is inextricably linked to accessing Defendant's scapegaming.com servers. Blizzard has alleged in its Complaint that the "donations" solicited by Scapegaming were thinly-veiled sales of virtual property and characters available for use in WoW. Compl., at ¶ 85; Declaration of Greg Ashe in support of Motion for Default Judgment ("Ashe Decl."), at ¶ 85; *see also TeleVideo Systems Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) (well-pleaded factual allegations of Complaint must be taken as true on a motion for default judgment).

For example, on Defendant's "Funserver," players that "donated" to Scapegaming were able to choose from a range of items, ranging in cost from $1 (to advance their character 2 levels) to $300 for an "Ancient Pack #4" collection of a number of rare WoW items. Ashe Decl., at ¶ 86. Most of the same items were also available to players on the WoWLegion server, but at an increased donation level. For those players, prices ranged from $2 (to advance a character 2 levels), to $300 for a package containing a level 70 character with weapons, gold, and other advanced in-game items. *Id.* at ¶ 87. On the WoWCrack server, most of the same items were available in exchange for donations as on the other two servers, ranging in price from $2 (to advance a character 2 levels) to $250 for a package containing a high level character, and assorted other advanced in-game items and gold. *Id.* at ¶ 88.

Similarly, players' Scapegaming "Shopping Cart" transactions were explicitly for the purchase of virtual property and characters available in WoW. The virtual property, characters and other in-game rewards received by "donors"

-5-

or purchased by players via "Shopping Cart" transactions were and are Blizzard's intellectual property. *Id.* at ¶ 89.

Here, as in *Filipiak* and *Divineo*, the sale of devices that presumptively will be used to access the Defendant's servers should be held tantamount to "acts of circumvention" under the DMCA, and should be the proper basis for an award of statutory damages. Scapegaming players' purchases of virtual property, characters and other in-game rewards — whether explicitly termed "Shopping Cart" transactions or euphemistically termed "donations" — are purchases for the sole purpose of accessing and playing on Defendant's scapegaming.com servers, and using the virtual items to obtain benefits in the virtual world operated by Defendant's servers. Accordingly, each of Defendant's 104,431 transactions (103,380 "Shopping Cart" transactions and 581 "donations") should constitute, at the very least, an "act of circumvention" or "performance of service" under the DMCA. Shumway Decl., at ¶ 4, Ex. A. Because the Court is required to award "not less than $200" per violation, the minimum statutory damages award for Defendant's at least 104,431 violations of the DMCA should be **$20,886,200**. *See* Order at 13:22-24; *see also Filipiak*, 406 F. Supp. 2d 1068, 1075-76 ("While this award of damages is substantial, the Court concludes that it is both consistent with Congressional intent and necessary to discourage wrongful conduct by other potential retailers who might be tempted to engage in what might otherwise appear to be a lucrative business selling illegal contravention devices.")

Blizzard appreciates the Court's concerns regarding the size of this award. However, the damages theory advanced here by Blizzard is actually quite conservative. If Blizzard had access to the scapegaming.com user log-in information solely in Defendant's possession, it is very likely the DMCA statutory damages would be many times more. Assuming that "each transaction a user conducts on Defendant's servers" constitutes a violation of the DMCA, *see* Order

1   at 14:10-13, then the 104,431 transactions or violations alleged here, is, in fact,
2   a conservative estimate of the actual number of Defendant's violations.

3       Based on Blizzard's investigation into Defendant's self-reported
4   representations regarding the number of scapegaming.com players, it appears there
5   were thousands of users who accessed the Scapegaming servers on a daily basis
6   between 2007 and 2009.  For example, Blizzard's archival investigation of
7   scapegaming.com revealed that on or about June 18, 2008, there were some
8   32,000 users playing on Scapegaming's various servers on that specific day.
9   Shumway Decl., at ¶ 5, Ex. B.  Indeed, on or about March 9, 2008, "Peyton"
10  (one of Defendant Alyson Reeves's online aliases) wrote in an online post to a
11  Scapegaming forum that "Keep in mind, there are 100,000K others that have
12  opinions too and **40,000K** *that play on our servers each day*."  *Id.* at ¶ 7, Ex. D
13  (emphasis added).  Defendant's website also revealed that Scapegaming maintains
14  a "WoWscape Community" for which there were **427,393** registered members on
15  June 17, 2008.  *Id.* at ¶ 6, Ex. C.  Assuming that each of those registered members
16  accessed a Scapegaming server only once (an exceptionally low estimate given
17  how often players access these servers), that alone would be sufficient to entitle
18  Blizzard to $85,478,600 in statutory damages ($200 x 427,393) under the DMCA.

19      As this Court has recognized, it has been extremely difficult for Blizzard to
20  calculate the number of Defendant's "acts of circumvention" due to the nature of
21  Defendant's circumventing activities, its failure to appear in this action or
22  participate in discovery, and the consequent lack of access to information solely in
23  Defendant's possession.  In the absence of absolutely certain data regarding the
24  number of times users have accessed Defendant's servers — information
25  peculiarly within the knowledge of Defendant — Blizzard has chosen a
26  conservative approach to estimating the number of Defendant's DMCA violations,
27  and the only one tied to concrete metrics.  *See Filipiak*, 406 F. Supp. 2d 1068,
28  1075 (estimate of devices sold need not be "exact," particularly where any

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  uncertainty as to the exact amount sold is a result of Defendant's own failure to
2  respond to discovery). Because the 104,431 monetary transactions conducted via
3  PayPal are unquestionably linked to players later accessing Defendant's servers
4  (in order to use their purchased virtual characters, property and in-game rewards),
5  each transaction should constitute an "act of circumvention" or "performance of
6  service" under the DMCA. Shumway Decl., at ¶ 4, Ex. A. Accordingly, the Court
7  should award a minimum of **$20,886,200** in statutory damages for Defendant's
8  repeated and willful violations of the DMCA.

## III. CONCLUSION

For the reasons set forth above and in its moving papers, Blizzard respectfully requests that the Court enter default judgment on behalf of plaintiff Blizzard Entertainment, Inc. against defendant Alyson Reeves, d/b/a Scapegaming and order immediate payment of $24,002,139 in disgorgement, statutory damages and attorneys' fees.

Respectfully submitted,

Dated: August 9, 2010            SONNENSCHEIN NATH & ROSENTHAL LLP

By _____/s/ Bonnie Lau_____
BONNIE LAU

Attorneys for Plaintiff
BLIZZARD ENTERTAINMENT, INC.

30351154