UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BLIZZARD ENTERTAINMENT, INC., | ) | CV 09-7621 SVW (AJWx) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER RE: DAMAGES |
| | ) | |
| ALYSON REEVES, D/B/A SCAPEGAMING, and Does 1-5, inclusive, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I. Introduction

On July 22, 2010, the Court granted Plaintiff's Motion for Default Judgment and directed Plaintiff to file additional evidence and legal briefing in order to "prove-up" its damages. Additional pertinent facts may be found in the Court's July 22 Order.

Having considered Plaintiff's supplemental evidentiary filing, the Court concludes that Plaintiff has adequately proven its damages and an evidentiary hearing is unnecessary. The hearing scheduled for August 17, 2010 is hereby VACATED.

**II. Legal Standards**

    **A.    Default Judgment**

"A party seeking a default judgment must state a claim upon which it may recover." Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citing PepsiCo Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172 (C.D. Cal. 2002)). When reviewing a motion for default judgment, the Court must accept the well-pleaded allegations of the complaint relating to liability as true. TeleVideo Systems Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). If the plaintiff is seeking money damages, however, the plaintiff must "prove-up" its damages. See SCHWARZER, TASHIMA, AND WAGSTAFFE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 6:81 (Rutter Group) (2010 supp.); Federal R. Civ. Proc. 55(b). The plaintiff is required to provide evidence of its damages, and the damages sought must not be different in kind or amount from those set forth in the complaint. Philip Morris USA, Inc., 219 F.R.D. at 498. When "proving-up" damages, admissible evidence (including witness testimony) supporting . . . damage calculations is usually required. See FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 6:94.1 (citing Stephenson v. El-Batrawi, 524 F.3d 907, 917 (8th Cir. 2008)).

    **B.    Disgorgement**

The Copyright Act, 17 U.S.C. § 504(b) permits the copyright owner to disgorge "any profits of the infringer that are attributable to the infringement." "The copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." Id.

### C. Statutory Damages

Under the Digital Millennium Copyright Act, "[a] person committing a violation of section 1201 or 1202 is liable for either (A) the actual damages and any additional profits of the violator . . . or (B) statutory damages as provided in paragraph (3)." 17 U.S.C. § 1203(1). Regarding statutory damages, the Act states: "At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just." 17 U.S.C. § 1203(c)(3)(A).

## III. Discussion

### A. Disgorgement

Plaintiff seeks to disgorge $3,052,339 in money Defendant received from the users of her website.

Plaintiff has submitted satisfactory evidence from third party PayPal Inc. showing that Defendant's PayPal account received $3,052,339 in gross revenues. (Lau Supp. Decl. Exs. A-C; see also Fed. R. Evid. 803(6), 1002, 1003.) Plaintiff has prepared a satisfactory summary of the raw business records. (Shumway Decl. ¶ 4 & Ex. A; see also Fed. R. Evid. 1006.) Finally, Plaintiff has demonstrated in its Complaint that Defendant Reeves was the operative figure behind the scapegaming.com website (Compl. ¶ 6); that the scapegaming.com website existed solely to infringe copyrights (Compl. ¶ 127); and that the scapegaming.com website received revenues through online financial transactions such as the ones detailed in Plaintiff's supplemental evidence (Compl. ¶¶ 97-

103). Accordingly, Plaintiff has satisfied its burden of introducing "proof . . . of the infringer's gross revenue." 17 U.S.C. § 504(b). Defendant has failed to meet her rebuttal burden of "prov[ing] his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." Id. Plaintiff is therefore entitled to recover the full $3,052,339 that Defendant received on account of her infringing activities.

### B.   Statutory Damages

Plaintiff also requests $20,886,200 in statutory damages under the Digital Millennium Copyright Act. Plaintiff argues that each monetary transaction reflected in PayPal's records constitutes an "act of circumvention" or "performance of service" under the Act. The Court previously expressed doubts regarding Plaintiff's legal theory and requested further briefing.

Plaintiff's additional legal briefing has not altered the Court's original conclusion. The Court concludes that financial transactions through PayPal are not "acts of circumvention" or "performances of service" that circumvent copyright-protection measures. These PayPal transactions do not reflect the number of times that Plaintiff's anti-piracy mechanisms have been by-passed or the number of times that Defendant's servers performed their infringing services for users. Rather, the quantity of transactions reflects the number of times people have **paid money** to Defendant – an act that is separate from a user's act of **accessing Defendant's servers**.

Unlike in Sony Computer Entertainment America, Inc. v. Filipiak, 406 F. Supp. 2d 1068, 1073-74 (N.D. Cal. 2005), and Sony Computer Entertainment America, Inc. v. Divineo, Inc., 457 F. Supp. 2d 957, 966-

4

67 (N.D. Cal. 2006), the Defendant in this case is not selling products that themselves violate the Digital Millennium Copyright Act by allowing users to circumvent Plaintiff's protective measures. Rather, Defendant is selling products that enhance users' gaming experiences while infringing Plaintiff's copyrights. Although Defendant's sales of in-game items and services probably violates **some** statute, it **does not** violate the statute under which Plaintiff seeks statutory damages – i.e., the Digital Millennium Copyright Act.

That said, the Court is sympathetic to the potential difficulty Plaintiff faces in calculating the number of "acts of circumvention" performed on Defendant's servers. The nature of Defendant's circumventing activities renders them far less susceptible to calculation then the computer chip devices discussed in the Sony Computer Entertainment America cases. Furthermore, the Court recognizes that "[t]he ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary." United States v. New York, N.H & H.R. Co., 355 U.S. 253, 256 n.5 (1957); see also ITSI T.V. Prods., Inc. v. Agricultural Ass'ns, 3 F.3d 1289, 1292 (9th Cir. 1993) ("[W]hen the true facts relating to a disputed issue lie peculiarly within the knowledge of one party, the burden of proof may properly be assigned to that party in the interest of fairness.") (internal quotations and punctuation omitted). This rule applies equally, if not more so, in the context of default judgment. See Shanghai Automation Instr. Co. v. Kuei, 194 F. Supp. 2d 995, 1004 (N.D. Cal. 2001); see also Henry v. Sneiders, 490 F.2d 315, 317 (9th Cir. 1974) (noting in default judgment action that "[a]ny insufficiency of

1  the plaintiff's evidence was a direct result of appellant's refusal to
2  comply with a legitimate request for discovery.").
3      Accordingly, the Court is persuaded by Plaintiff's supplemental
4  evidentiary submissions showing that Defendant's website hosted 32,000
5  users on a given day in June 2008 (Shumway Decl. Ex. B); there were
6  427,393 members of Defendant's website's "community" in June 2008 (id.
7  at Ex. C.); and Defendant herself (through her alias "Peyton," see
8  Compl. ¶ 6) claimed as of March 2008 that "40,000 play on our servers
9  each day."  (Shumway Decl. Ex. D.)
10     As Plaintiff demonstrates in its Complaint, Defendant's websites
11 allow Defendant's users "to bypass the anti-piracy checks [Plaintiff]
12 has implemented that otherwise take place before the game client may
13 proceed to enter the [World of Warcraft] gaming environment."  (Compl.
14 ¶ 73; see also id. at ¶¶ 87-91 (describing "down-patching" process,
15 which "allows users to circumvent [Plaintiff's] authentication
16 software").)  Plaintiff further demonstrates that Defendant's website
17 exists primarily to enable Defendant's users to access Plaintiff's
18 copyrighted works and circumvent Plaintiff's protective measures.
19 (Compl. ¶¶ 126-27; see generally Compl. ¶¶ 53-103 (describing
20 Defendant's operations).
21     Based on these allegations, it is reasonable to infer that
22 Defendant has provided each of its users with anti-circumvention
23 products or services on at least one occasion.  Although Plaintiff is
24 unable to prove this fact definitively, the Court must draw all
25 reasonable inferences in Plaintiff's favor on account of Defendant's
26 failure to participate in the litigation process.  See, e.g., Henry v.
27 Sneiders, 490 F.2d at 317 ("Any insufficiency of the plaintiff's
28

evidence was a direct result of appellant's refusal to comply with a legitimate request for discovery."). Accordingly, the Court concludes that each of the 427,393 community members downloaded, accessed, or otherwise used anti-circumvention software, services, or products. Defendant's website's primary purpose was to enable users to circumvent Plaintiff's technological protection measures, and Defendant has failed to introduce any evidence showing that any of Defendant's users were engaged in benign activities. Accordingly, the Court concludes that the appropriate amount of statutory damages is $85,478,600 (that is, 427,393 users multiplied by the statutory minimum of $200 per "act of circumvention" and/or "performance of service"). To the extent that this figure appears unreasonably large, Congress has mandated this approach and the Court is unable to deviate from it.

**3.    Attorney's Fees**

Plaintiff has sought $63,600 in attorneys' fees. Pursuant to 17 U.S.C. § 505, the Court may award reasonable attorneys' fees to the prevailing party. <u>See also</u> Local Rule 55-3 (prevailing party in default judgment may recover attorneys' fees if allowed by contract or statute). The Court has previously concluded that the allegations and evidence reveal that Defendant's acts of infringement were willful.

Plaintiff is therefore entitled to recover the full amount of the fees it has requested, $63,600. The Court concludes that although this amount is far smaller than allowable under Local Rule 55-3, this is a reasonable amount under 17 U.S.C. § 505.

**IV. Conclusion**

The hearing scheduled for August 17, 2010 is hereby VACATED.

Based on Plaintiff's evidentiary submissions, the Court concludes that Plaintiff is entitled to default judgment in the amount of $3,052,339 in disgorged profits, $85,478,600 in statutory damages, and $63,600 in attorneys' fees.  The Court will file a separate judgment accordingly.

      IT IS SO ORDERED.

DATED:   August 10, 2010

                              STEPHEN V. WILSON
                        UNITED STATES DISTRICT JUDGE